# TABLE OF CONTENTS OF EXHIBITS

EXHIBIT "A"

ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE (COC 1140)
DATED JUNE 23, 2007                                    (ONE PAGE)

INSTITUTION CLASSIFICATION COMMITTEE (ICC) HEARING
DATED JUNE 28, 2007 (COC 128-G)                        (ONE PAGE)

RULE VIOLATION REPORT (RVR) COC-115
"DISPOSITION" DATED SEPTEMBER 10, 2007                 (THREE PAGES)

INSTITUTION CLASSIFICATION COMMITTEE (ICC) HEARING
DATED SEPTEMBER 13, 2007 (COC 128-G)                   (ONE PAGE)

                                EXHIBIT "A" (SIX PAGES TOTAL)

EXHIBIT "B"

ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE (COC 114-D)
DATED SEPTEMBER 17, 2007                               (ONE PAGE)

                                EXHIBIT "B" (ONE PAGE TOTAL)

EXHIBIT "C"
RULE VIOLATION REPORT (RVR) CDC 115
"DISPOSITION", I.E. REPORT, FINAL COPY (ASSORTED REPORT)
DATED NOVEMBER 12, 2007                                (21 + 10) PAGES
INCIDENT REPORT (CDC 837A)                             (8 PAGES)

                                EXHIBIT "C" (39 PAGES TOTAL)

EXHIBIT "D"
ICC HEARING DATED SEPTEMBER 27, 2007 (COC-118G)
                                        TOTAL (ONE PAGE)

TABLE OF CONTENTS EXHIBITS CONT.

EXHIBIT "E"

U.S.D.C. EASTERN DISTRICT CALIFORNIA
FINDINGS AND RECOMMENDATIONS
DATED JANUARY 11, 2005                    (TOTAL TWO PAGES)
COHEA V. PLILER, WARDEN, et al., CV-00-2799


EXHIBIT "F"

U.S.D.C. EASTERN DISTRICT CALIFORNIA
ORDER DATED MARCH 24, 2006
COHEA V. PLILER, WARDEN, et al., CV-00-2799    (TOTAL THREE (3) PAGES)


EXHIBIT "#1"

SHU TERM ASSESSMENT WORKSHEET
DATED NOVEMBER 21, 2007  (CDC 629-A)    (TOTAL ONE PAGE)


EXHIBIT "#2"

NOTICE OF ADOPTION OF EMERGENCY REGULATIONS
CDC CODE OF REGULATIONS
DATED JANUARY 10, 2007                    (TOTAL ELEVEN PAGES)

ii

EXHIBIT "A"

EXHIBIT "A"

STATE OF CALIFORNIA
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

Calipatria State Prison
A5 - ASU

| DISTRIBUTION: | |
| --- | --- |
| WHITE – CENTRAL FILE | CANARY – WARDEN |
| BLUE – INMATE (2ND COPY) | PINK – HEALTH CARE MGR |
| GREEN – ASU | GOLDENROD – INMATE COPY (1ST COPY) |

INMATE'S NAME
**COHEA DANNY**

**J13647**

## REASON(S) FOR PLACEMENT (PART A)

☐ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
☐ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
☒ ENDANGERS INSTITUTION SECURITY   ☐ UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT: On Friday, June 23, 2007, at approximately 2215 Hours, while inside your assigned cell, B5-244U, the B-Rover #2 Officer, J Parker, reported that you deliberately exposed your penis to her, and thus committed an act of Indecent Exposure with Priors, as being recorded on Incident LOG No.: CAL-FB5-07-06-0184. In accordance with the CDCR Inmate Sexual Misconduct Reduction Strategy, Memo date 6/08/05, these acts are considered a threat to institutional security. Therefore, you are being placed in Administrative Segregation, where you will remain pending Administrative Review of you Program & Housing Needs. This placement may cause change to your Custody Level, Privilege Group, Work Status, and Visiting Status. You are not a participant in the Mental Health Services Delivery System (MHSDS).

☐ CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)   ☐ IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE:

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
| --- | --- | --- | --- |
| 06/23/07 | G. Z. HERNANDEZ | *G.Z.H* | LIEUTENANT |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
| --- | --- | --- | --- | --- |
| 6/23/07 | 0055 | D Erwin | *D Erw* | Sgt |

| INMATE'S SIGNATURE | CDC NUMBER |
| --- | --- |
| ☒ INMATE REFUSED TO SIGN | |

## ADMINISTRATIVE REVIEW (PART B)
The following to be completed during the initial administrative review by Captain or higher by the first working day following placement

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
| --- | --- | --- | --- |
| STAFF ASSISTANT'S NAME  N/A | TITLE | INVESTIGATIVE EMPLOYEE'S NAME  N/A | TITLE |

**IS THIS INMATE:**

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| LITERATE? | ☒ YES ☐ NO | EVIDENCE COLLECTION BY IE UNNECESSARY | ☐ YES | ☒ NO |
| FLUENT IN ENGLISH? | ☒ YES ☐ NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | ☐ YES | ☐ NO |
| ABLE TO COMPREHEND ISSUES? | ☒ YES ☐ NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | ☒ YES | ☐ NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | ☒ YES ☐ NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | ☐ YES | |
| DECLINED FIRST STAFF ASSISTANT ASSIGNED? | | | | |

Any "NO" requires SA assignment                    Any "NO" may require IE assignment
☒ NOT ASSIGNED                     ☒ NOT ASSIGNED *B'cos* I/E NOT WAIVED

## INMATE WAIVERS

☐ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER   ☐ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| ☐ NO WITNESSES REQUESTED | INMATE SIGNATURE | DATE |
| --- | --- | --- |

## WITNESSES REQUESTED FOR HEARING  (CASH B5-247)

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| --- | --- | --- | --- |
| Wood | B5-243 | Foster | B5-242 |
| Chico | B5-243 | Parker | B/o |
| Grayton | B5-250 | 7o cell 2  Sgt Irwin | |

DECISION: ☐ RELEASE TO UNIT/FACILITY ___   ☒ RETAIN PENDING ICC REVIEW   ☒ DOUBLE CELL   ☐ SINGLE CELL PENDING ICC

REASON FOR DECISION:
Return ASU pending ICC EAUABLE OFFENCE.

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
| --- | --- | --- | --- | --- |
| R Johnson | CAPTAIN (A) | 6/25/07 | 1300 | |
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

See Chronological Classification Review document (CDC 128-G) for specific hearing information

| | | |
|---|---|---|
| CDCR NO #:  J13647 | NAME: COHEA | HOUSING:  ASU 159L |
| PS: 74  LEVEL: IV | MEPD: 08/06/06 | CUSTODY: MAX |
| WG/PG: D2D EFF. 06/23/07 | NEXT ANNUAL: 02/08 | |

**INITIAL ASU REVIEW:** RETAIN ASU PENDING DISPOSITION OF RVR DATED 06/22/07 (LOG #06-07-B32) / ESTABLISH MAX CUSTODY & WG/PG D2D EFFECTIVE 06/23/07 / **REFER TO CSR RX 90 DAY ASU EXTENSION** / DOUBLE CELL APPROVED / CLEAR FOR YARD WITH CELLMATE / NO MHSDS, MDO, DDP, OR DPP ISSUES NOTED / RESCHEDULE ICC ON 09/20/07

Inmate Cohea was screened in person in ICC today for the purpose of an Initial ASU Review. Inmate was placed in Administrative Segregation Unit (ASU) on 06/23/07 for the offense of Indecent Exposure, referenced in CDC 115 dated 06/22/07 (Log #06-07-B32). If found guilty, inmate could be assessed a 6 month SHU term with a tentative MERD of 11/08/07. Committee notes that pursuant to memorandum dated 04/06/07 CCR Title 15 § 3341.5(c)(9)(K) has been adopted to require assessment of a SHU term for the conduct which inmate is charged with. The 114D interview was conducted on 06/25/07 by R. Johnson, FC (A) and was co-signed by W. Price, AW (A). The 114D hearing was conducted on 06/28/07 by ICC. Staff Assistant was not assigned. Investigative Employee was not assigned. The issues are not complex nor is the inmate illiterate. His reading GPL is 7.7. Review of the 114D was within time limitations and no witnesses were requested. Inmate was informed and agreed to continue with hearing. Inmate requested an IE for his 114D, Committee determined witnessed and an IE were note required. Committee finds that segregated housing is appropriate and elects to retain inmate in ASU pending disposition of RVR dated 06/22/07 (Log #06-07-B32). **Committee refers this case to the CSR requesting a 90 Day ASU Extension.** If inmate is scheduled for court, CAL will be responsible for transportation of inmate. Case factors remain the same as noted in Initial CDC 128G dated 03/02/06. TB code 22 is noted in CDC 128C dated 03/13/07. No enemies in ASU are noted. Committee acts to assign yard with cellmate. Inmate's case was reviewed for double cell housing and no pervasive pattern of in cell violence is noted. Inmate is assigned to double cell housing with no special restrictions. CDC 1882 is located in the central file. He was endorsed to CAL-IV(270) on 01/23/06. Next BPH SUB #1 is scheduled for 09/10. Inmate does not meet MDO, DPP or DDP criteria. Inmate is not a participant in the MHSDS. IDTT was conducted on 06/28/07 prior to ICC, inmate was not included in the MHSDS. CDC 128C2 indicates NCF. Confidential information was not used. Inmate is assigned to AD SEG earning status WG/PG D2D effective 06/23/07, custody is changed to MAX. WG/PD D2D established noted inmate was on C/C prior to ASU placement. Inmate was placed on non-contact visiting status effective 06/23/07. Inmate was advised he would be rescheduled for ICC on 09/20/07. Inmate actively participated and stated he understood the actions of the Committee. Inmate was advised of his right to appeal and this Committee acts as his first level of appeal. His next Annual Review is 02/08. Inmate had no questions or comments to address to the committee at this time. Inmate stated he did not do anything. There are no other pertinent case factors noted. (nbn)

---

| | | |
|---|---|---|
| _C. Butler_ | _M. Whitman, CCII_ | |
| C. BUTLER, CDW (A)        Chairperson | M. WHITMAN, CCII        Recorder | |

**Committee Members:** S. Andersen, AW; R. Johnson, FC (A); C. Caffarella, C&PR; J. Magner, Ph.D.
cc:    Counselor, Inmate
Date: 06/28/2007                    **CLASSIFICATION:** ICC AD/SEG                    **INST:** CAL-IV

STATE OF CALIFORNIA      804 TO RECORDS: 6/27/07      DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| J-13647 | COHEA | | MED 9-6-2010 | CSP-CAL | B5-244L | 06-07-B32 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR #3007 | INDECENT EXPOSURE | "B5" H/U | 06/22/07 | 2215 HRS. |

CIRCUMSTANCES

On Friday, June 22, 2007, at approximately 2215 hours, while performing my duties as "B" Rover #2, I entered Housing Unit B5 to conduct a "Security Check" of the unit. While placing items into the office use by the building officers, I looked through the office window in the direction of upper "C" section and observed Inmate COHEA (J-13647, B5-244L) standing at the cell door stroking his erect penis with his right hand while looking in my direction. Inmate COHEA was standing at the cell door holding a book with his left hand and the bright cell light was on. Inmate COHEA was stroking his erect penis with his right hand underneath the book. I notified the Control Booth Officer and notified my supervisor via institutional telephone of Inmate COHEA'S behavior. While conducting my security check of the Housing Unit, I informed Inmate COHEA that his intentional public masturbation was inappropriate and that he would be receiving a CDC-115 for his behavior. Inmate COHEA is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DPP). Inmate COHEA does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below.

| REPORTING EMPLOYEE (Typed Name and Signature) 78 Running for c/o PARKER | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ J. PARKER, Correctional Officer | | 6·28·07 | "B" Rover #2 | Tue/Wed |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|---|
| O. VALDEZ, Program Sergeant | | 6-28-07 | N/A | | N/A |
| | | | DATE | LOC. | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO | | | |
|---|---|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE  ☑ SERIOUS | 6 30 07 | "D" | ▶ M. JIMENEZ, CORRECTIONAL LIEUTENANT  M. Jimenez | ☐ HO | ☑ SHO | ☐ SC | ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☑ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| | ▶ M. X. Chu | 7/4/07 | 0630 | | | |
| ☐ INCIDENT REPORT LOG NUMBER: AL-F05-07 07-0164 | BY: (STAFF'S SIGNATURE)  ▶ S. F. ARIAS | DATE 7/17/07 | TIME 0910 | BY: (STAFF'S SIGNATURE)  ▶ | DATE | TIME |

HEARING

**(CONTINUE RVR PART-C)**

| REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA | | | | |
|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | SIGNATURE | | DATE | TIME |
| J. SIGLER, CORRECTIONAL LIEUTENANT | | ▶ | 9/3/07 | 1430 |
| REVIEWED BY: (SIGNATURE)  ▶ W.J. PRICE, FACILITY CAPTAIN # | DATE 9/3/07 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE  ▶ G.J. JANDA, CDO | DATE 9/11/07 |
| ☑ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY: (STAFF'S SIGNATURE)  ▶ | DATE 9·12·07 | TIME 1025 |

CDC 115 (7/88)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE ___/___ OF ___2___

| CDC NUMBER J-13647 | INMATE'S NAME COHEA | LOG NUMBER 06-07-B32 | INSTITUTION CSP-CAL | TODAY'S DATE 08/28/07 |
|---|---|---|---|---|

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

On Thursday, August 28, 2007, at approximately 2155, hours, Inmate COHEA, J-13647 appeared before me for adjudication of this Rules Violation Report (RVR) Log Number 06-07-B32. I introduced myself as the Senior Hearing Official (SHO) for this disciplinary hearing and explained the hearing rules and procedures. Inmate COHEA stated that he was in good health, and acknowledged receipt of all reports 24 hours prior to this hearing and was ready to proceed with this hearing. All time constraints and due processes have been met. Inmate COHEA acknowledged receipt of all reports and/or pertinent documents more than twenty-four (24) hours in advance of the hearing as required per CCR §3320 (c)(2). Inmate COHEA is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DPP). Inmate COHEA does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below. Inmate COHEA stated that he completed the 12th grade with 3 years of college.

**EFFECTIVE COMMUNICATION:**

Effective communication was established with Inmate COHEA by the SHO reading the RVR slowly to Inmate COHEA. Inmate COHEA was instructed to read the RVR back to the SHO and identify any portions of the RVR that he did not understand. The SHO asked Inmate COHEA if he understood what he had just read and he stated "Yes". It is the opinion of the SHO that Inmate COHEA understands the charge and understands his Due Process.

**DUE PROCESS:** Inmate COHEA verified that he received all pertinent documents twenty-four (24) hours prior to this hearing. All time constraints have been met. There are no Due Process errors.

A CDC-115X Mental Health Services assessment was submitted on July 23, 2007 and as documented it was completed on June 28, 2007, rejecting Inmate COHEA from the MHSDS. The SHO believes this to be in error as the date of completion is prior to the date of incident.

Inmate COHEA requested to postpone this hearing at 2100 hours, pending availability of the Reporting Employee (RE) as indicated by his signature on the CDC-115-A. This hearing was postponed on Thursday, August 28, 2007.

This hearing was resumed on Wednesday, August 29, 2007, at 2004 hours.

**STAFF ASSISTANT:** Inmate COHEA requested the assignment of a SA for confidential relationship as indicated by his signature on the CDC-115-A, however, Per §California Code of Regulations (CCR) 3315(d) (2) a Staff Assistant (SA) was not assigned. Inmate COHEA is literate, does speak English in the written and/or verbal form and the complexity of the issues are such that assistance is not necessary for Inmate COHEA to comprehend the nature of the charges of the disciplinary process.

**INVESTIGATIVE EMPLOYEE:** Per §California Code of Regulations (CCR) 3315 (d) (1) an Investigative Employee (IE) was assigned. On July 4, 2007, Correctional Officer M. Lee was assigned as Inmate COHEA'S IE. Inmate COHEA current housing prevents him from gathering and presenting an adequate defense. Inmate COHEA was served with a completed copy of his IE report on Monday, August 27, 2007.

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER J. SIGLER, Correctional Lieutenant | DATE SIGNED 9/3/07 |
|---|---|---|
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 9-12-07 | TIME SIGNED 1025 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                                          DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                                           PAGE __2__ OF __2__

| CDC NUMBER<br>J-13647 | INMATE'S NAME<br>COHEA | LOG NUMBER<br>06-07-B32 | INSTITUTION<br>CSP-CAL | TODAY'S DATE<br>08/28/07 |
|---|---|---|---|---|

☐ SUPPLEMENTAL  ☑ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☑ HEARING  ☐ IE REPORT  ☐ OTHER_____

## REFERRAL FOR FELONY PROSECUTION:

Inmate COHEA requested for his hearing to be postponed on July 4, 2007, pending resolution of possible referral to the District Attorney's office for criminal prosecution as indicated by his signature on the CDC Form 115-A.

On July 30, 2007, Inmate COHEA revoked his request to postpone his hearing pending resolution of possible referral to the District Attorney's office for criminal prosecution as indicated by his signature on the CDC Form 115-A.

Inmate COHEA was informed that any statements he makes in the hearing could be used against him in a court of law, should this case be referred. Inmate COHEA stated that he understood and wanted to continue with the hearing

**INMATE'S PLEA**: The charges were read to Inmate COHEA and he plead "**NOT GUILTY**".

**INMATE"S STATEMENT**: Inmate COHEA chose not to make any statement other than entering his plea of "NOT GUILTY"

**WITNESSES**: Inmate COHEA chose to have witnesses at this hearing as per his signature on the CDC 115-A. Inmate COHEA requested the presence of the reporting Employee (RE) Correctional Officer J. Parker.

FINDINGS: Inmate COHEA was found "**NOT GUILTY**" of violating CCR, Section 3007 (c), for the specific act of "INDECENT EXPOSURE". This finding was based on a preponderance of evidence submitted at the hearing, which is considered valid and does substantiate the charge. The evidence includes:

A) The reporting Employee's written report which states in part: "On Friday, June 22, 2007, at approximately 2215 hours, while performing my duties as "B" Rover #2, I entered Housing Unit B5 to conduct a "Security Check" of the unit. While placing items into the office use by the building officers, I looked through the office window in the direction of upper "C" section and observed Inmate COHEA (J-13647, B5-244L) standing at the cell door stroking his erect penis with his right hand while looking in my direction. Inmate COHEA was standing at the cell door holding a book with his left hand and the bright ceil light was on. Inmate COHEA was stroking his erect penis with his right hand underneath the book. I notified the Control Booth Officer and notified my supervisor via institutional telephone of Inmate COHEA'S behavior. While _____ security check of the Housing Unit, I informed Inmate COHEA that his intentional public masturbation was inappropriate and that he would be receiving a CDC-115 for his behavior.

## DISPOSITION:

The SHO dismissed this RVR in the Interest of Justice. The RE was not available and several attempts to make the RE available via Institution Telephone were made on August 28, 2007 and August 29, 2007, with negative results.

Inmate COHEA was advised of his rights to appeal the findings and/or disposition of the hearing, pursuant to CCR §3084.1 and CCR §3312 (b) (1) and advised he would receive a completed copy of this hearing report upon final audit by the Chief Disciplinary Officer (CDO) whose review and signature affirms, reverses, or modifies this disciplinary action and constitutes the First Level of Review for appeal purposes.

| | SIGNATURE OF WRITER<br>J. SIGLER, Correctional Lieutenant | DATE SIGNED<br>9/5/07 |
|---|---|---|
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED<br>9·12·07 | TIME SIGNED<br>1025 |

CDC 115-C (5/95)                                                                          OSP 99 25082

STATE OF CALIFORNIA                                                        DEPARTMENT OF CORRECTIONS & REHABILITATION
                                                                           CDCR-128G (Rev. 12/91)

CDCR NO #: J13647              NAME: COHEA              HOUSING: ~~ASU 159~~ 159L
PS: 72  LEVEL: IV             MEPD: 08/06/06            CUSTODY: MED A       Rec:
WG/PG: A2B EFF. 06/20/07      NEXT ANNUAL: 06/08                            10/5/07
                                                                           CCII Guzman

EXCEPTIONAL / ANNUAL REVIEW: ANNUAL REVIEW FOR THE PERIOD OF 06/01/06 TO 05/31/07 / PS REDUCED TO 72 / RELEASE TO FACILITY B GP / RECEIVING FACILITY TO REVIEW FOR BMU PLACEMENT / ESTABLISH MED A CUSTODY & WG/PG A2B EFFECTIVE 06/20/07 / P/O SS W/L / DOUBLE CELL APPROVED / NO MHSDS, MDO, DDP, OR DPP ISSUES NOTED

Inmate Cohea was screened in person by ICC for the purpose of an Exceptional Review. Inmate was initially placed in Administrative Segregation Unit (ASU) on 06/23/07 for the offense of Indecent Exposure referenced in CDC 115 dated 06/22/07 (Log #06-07-B32). RVR dated 06/22/07 (Log #06-07-B32) was adjudicated by the SHO on 08/28/07. Case was dismissed by the SHO on 08/28/07 in the interest of justice. This hearing also serves as inmate's Annual Review for the period of 06/01/06 to 05/31/07. Inmate received 1 qualifying period for disciplinary free behavior and no qualifying periods for work/education. Inmate's Placement Score has been reduced from 74 to 72. Committee elects to release inmate to Facility B GP, Receiving Facility to review for BMU Placement, establish MED A Custody and WG/PG A2B effective 06/20/07. Place on the Support Services Waiting List. Inmate's case was reviewed for double cell housing and no pervasive pattern of in cell violence is noted. Inmate is assigned to double cell housing with no special restrictions. Inmate's reading GPL is 7.7. Inmate was endorsed to CAL on 01/23/06. Next BPH is scheduled for 09/10. Case factors remain the same as noted in CDC 128G dated 03/02/06. TB Code of 22 is noted in CDC 128C dated 03/13/07. Inmate meets 270 design criteria. Inmate does not meet MDO, DDP or DPP criteria. Inmate is not a participant in the MHSDS. Inmate actively participated and stated he understood the actions of Committee. Inmate was advised of his right to appeal and that this Committee acts as his first level of appeal. His next Annual Review is scheduled for 06/08. Inmate stated he had no questions or comments to address to the Committee. There are no other pertinent case factors noted. (nbn)

_____  10/2/07  _____              _____
T. Ochoa, CDW      Chairperson   J. Anaya, CCII   Recorder  R. Johnson, FC (A)   Reviewed

Committee Members: G. Chavarria, AW (A); J. Criman, Asst C&PR (A); J. Bellinger, Ph.D.
cc:    Counselor, Inmate
Date: 09/13/2007           CLASSIFICATION: ICC ASU              INST: CAL-IV

EXHIBIT "B"

EXHIBIT "B"

STATE OF CALIFORNIA
**ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE**
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

| DISTRIBUTION: | |
| --- | --- |
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

CAL-FB5-07-09-0273

| INMATE'S NAME | CDC NUMBER |
| --- | --- |
| COHEA | J-13647 |

## REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY    [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
On Monday, September 17, 2007, at approximately 11:20 hours you, Inmate COHEA, J-13647, were involved in an incident of indecent exposure against staff. A review of your Central File indicates that you have a prior history of similar behavior. Based on these facts you are deemed a threat to the safety and security of the institution, and are being detained in Administrative Segregation pending a review by the Institution Classification Committee of your program and housing needs. As a result of this placement your credit earning, custody level, privilege group, and visiting status are subject to change. A review of your C-file was conducted and you are not a participant in the Mental Health Services Delivery System (MHSDS).

| [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) | [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / / |
| --- | --- |

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
| --- | --- | --- | --- |
| 09/17/07 | J. JIMENEZ | | Lieutenant |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
| --- | --- | --- | --- | --- |
| 9/17/07 | 1407 | T. COTRTH | | |

| [ ] INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
| --- | --- | --- |
| | X | |

## ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
| --- | --- | --- | --- |
| STAFF ASSISTANT NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
| | | | |

### IS THIS INMATE:

| | | EVIDENCE COLLECTION BY IE UNNECESSARY | [X] YES [ ] NO |
| --- | --- | --- | --- |
| LITERATE? | [X] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [X] YES [ ] NO |
| FLUENT IN ENGLISH? | [X] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] YES [ ] NO |
| ABLE TO COMPREHEND ISSUES? | [X] YES [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] YES [ ] NO | | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | |

| | Any "NO" requires SA assignment | | Any "NO" may require IE assignment |
| --- | --- | --- | --- |
| [ ] NOT ASSIGNED | | [X] NOT ASSIGNED | |

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    [X] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| [X] NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE X | DATE |
| --- | --- | --- |

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| --- | --- | --- | --- |
| Sgt Velasco | Sgt | Reporting Employee | |
| C/O Lewin | C/O | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY_____ [X] RETAIN PENDING ICC REVIEW  [X] DOUBLE CELL  [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

I/M Pres onts a threat to Institutional Security + others

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
| --- | --- | --- | --- | --- |
| W.J Price | CAPT | 9/18/07 | 1110 | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | DATE OF REVIEW |
| --- | --- | --- |

**See chronological Classification Review document (CDC 128 - G) for specific hearing information**

EXHIBIT "C"

EXHIBIT "C"

STATE OF CALIFORNIA
## RULES VIOLATION REPORT

804 TO RECORDS: 9/14/07

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| J13647 | COHEA | | | CSP-CAL | B5-247L | 09-07-B23 |
| VIOLATED RULE NO(S). | | SPECIFIC ACTS | | LOCATION | DATE | TIME |
| CCR #3007 | | Indecent Exposure | | B5 B.U. | 09/17/07 | 1120 HRS |

CIRCUMSTANCES

On Monday, September 17, 2007, at approximately 1120 hours, while performing my duties as BMU Facilitator/Teacher, in housing unit B5, I was conducting my rounds meeting with the inmates in the BMU program to discuss their individualized programs. I was called back to cell B5-247, by Inmate Cohea, J13647, B5-247L the sole occupant of the cell. When I arrived at Inmate Cohea's cell door the cell light was on and I observed Inmate Cohea lying on the lower bunk wearing only his boxer shorts. Inmate Cohea was lying facing the door with his legs spread wide open with his right leg up and his boxers pulled over deliberately exposing his testicles. Inmate Cohea asked me questions for Counselor Roacho, which had nothing to do with me, therefore it is my belief that Inmate Cohea's actions and reasons for calling me over to his cell were for the purpose of lewdly and lasciviously exposing himself to me for his own sexual gratification. Inmate Cohea has been issued CDC 115's for similar behavior on the following dates: 3/11/06, 2/21/06, 4/29/04, 12/13/02, 10/13/01, 1/20/01, 1/22/99, and 7/11/95.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ D. Patzloff, Teacher | | 10/ /07 | BMU Facilitator | S/S/H |
| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
| ▶ C. Catlett, Program Sergeant | | 7/25/07 | DATE N/A    LOC. N/A | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | D | | ▶ G. EDWARDS CORRECTIONAL LIEUTENANT. | ☐ HO  ☒ SHO  ☐ SC  ☐ FC |
| ☒ SERIOUS | | | | |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT 7219 of Im Cohea J13647 |
|---|---|---|---|---|
| | ▶ J. Olivarez    OL | 4/26/07 | 1930 | Dated 9/17/07 (cir 115 x |
| ☒ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) |
| L-FB5-07-09 | ▶ J. Olivarez    OL | 4/26/07 | 1930 | ▶ J. Olivarez    OL    4/26/07    1930 |
| HEARING 0273 | | | | |

---

RVR Hearing Continued on Part C

---

| REFERRED TO  ☐ CLASSIFICATION    ☐ BPT/NAEA | | | | |
|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | SIGNATURE | | DATE    TIME |
| ▶ R. JOHNSON Lieutenant | | ▶ | | |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | | DATE |
| ▶ J. KELLERMAN Facility B Captain | 10/30/07 | ▶ G.J. JANDA, W.N.A/R CDO | | 11/ / |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | ▶ | | DATE    TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 2 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J13647 | COHEA | 09-07-B23 | CSP-CAL | 09/17/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

Inmate Cohea is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DPP). Inmate Cohea does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below.

Inmate Cohea is aware of this report.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| D. PATZLOFF, Teacher | 9/21/07 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | J. Olivarez | 9/26/07 | 1930 |

CDC 115-C (5/95)

OSP 99 25082

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| J13647 | COHEA | 3007 | 09/17/07 | CSP-CAL | 09-07-B23 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☒ YES ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ *[signature]* Cohea | 7/26/07 |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ REQUESTED   ☐ WAIVED BY INMATE | ▶ | |
| ☐ ASSIGNED   DATE   NAME OF STAFF | | |
| ☒ NOT ASSIGNED   REASON: I/M does not meet criteria per CCR 3315 (d)(2) | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ REQUESTED   ☐ WAIVED BY INMATE | ▶ *[signature]* Cohea | 7/26/07 |
| ☐ ASSIGNED   DATE 09/26/07   NAME OF STAFF  J. Rosales, Correctional Officer | | |
| ☐ NOT ASSIGNED   REASON: ad/seg. status. | | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☒ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☒ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| Officer Trevent, CCI Richo | ☒ | | Sergeant Velasco, LNA Rodiles | | ☒ |
| Inmate Jellies | | ☒ | Sergeant Erwin, assistant Physician | | ☒ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

*[handwritten]* Cohea requested two additional witnesses whom he identified as inmates in cells B5-216 and B5-214 and I was unable to identify the inmates requested.

*[large X across page]*

| | INVESTIGATOR'S SIGNATURE ▶ J. Rosales, Officer | DATE 10/10/07 |
|---|---|---|
| ☒ COPY OF CDC 115-A GIVEN INMATE   BY: (STAFF'S SIGNATURE) ▶ J. Olivarez | TIME 1930 | DATE 9/26/07 |

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**
PAGE _1_ OF _4_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J13647 | COHEA | 09-07-B23 | CSP-CAL | 10/24/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

On Wednesday, October 24, 2007, at approximately 1140, hours, Inmate COHEA, J13647, appeared before me for adjudication of this Rules Violation Report (RVR) Log Number 09-07-B23. I introduced myself as the Senior Hearing Official (SHO) for this disciplinary hearing and explained the hearing rules and procedures. Inmate COHEA stated that he was in good health, and acknowledged receipt of all reports 24 hours prior to this hearing and was ready to proceed with this hearing. All time constraints and due processes have been met. Inmate COHEA acknowledged receipt of all reports and/or pertinent documents more than twenty-four (24) hours in advance of the hearing as required per CCR §3320 (c)(2). Inmate COHEA is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DPP). Inmate COHEA does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below. Inmate COHEA stated that he had completed High School and has a High School diploma.

**EFFECTIVE COMMUNICATION:**

Effective communication was established with Inmate COHEA by the SHO. Inmate COHEA was instructed to read the RVR back to the SHO and identify any portions of the RVR that he did not understand. The SHO asked Inmate COHEA if he understood what he had just read and he stated "Yes". It is the opinion of the SHO that Inmate COHEA understands the charge and understands his Due Process.

**DUE PROCESS:** Inmate COHEA verified that he received all pertinent documents twenty-four (24) hours prior to this hearing. All time constraints have been met. There are no Due Process errors.

**STAFF ASSISTANT:** Per §California Code of Regulations (CCR) 3315(d) (2) a Staff Assistant (SA) was not assigned.

Inmate COHEA is literate, speaks English in the written and/or verbal form and the complexity of the issues are such that assistance is not necessary for Inmate COHEA to comprehend the nature of the charges of the disciplinary process

**INVESTIGATIVE EMPLOYEE:** Per §California Code of Regulations (CCR) 3315 (d) (1) an Investigative Employee (IE) was assigned. Inmate COHEA's current housing prevents him from gathering and presenting an adequate defense. Correctional Officer J. Rosales was assigned as Inmate COHEA'S I.E. on September 26, 2007.

**REFERRAL FOR FELONY PROSECUTION:**

Inmate COHEA requested for his hearing not to be postponed pending resolution of possible referral to the District Attorney's office for criminal prosecution as indicated by his signature on the CDC Form 115-A.

Inmate COHEA was informed that his Miranda rights are in affect and any statements that he makes in this hearing could be used against him in a court of law, should this case be referred. Inmate COHEA stated that he understood and wanted to continue with the hearing.

RVR continued on CDC-115 Part C

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| R. JOHNSON, Correctional Lieutenant | | |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 11/14/17 | 1105 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 2 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| J13647 | COHEA | 09-07-B23 | CSP-CAL | 10/24/07 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☒ HEARING  ☐ IE REPORT  ☐ OTHER_____

**INMATE'S PLEA**: The charges were read to Inmate COHEA and he plead "**NOT GUILTY**".

**INMATE"S STATEMENT**: Inmate COHEA presented the SHO with a (5) page handwritten statement for inclusion in this report (See attached handwritten statement).

The SHO asked Inmate Cohea the following question;

Q) Did you have any linen, sheets and blankets?

A) Yes.

**WITNESSES**: Inmate COHEA requested the reporting employee as a witness, pursuant to CCR, title 15 section 3315(e)(4) and 3315(e)(6) the reporting employee was made available via speakerphone due to her assignment as a teacher on B facility precluding her from leaving her area of assignment to be present at the hearing. Inmate Cohea submitted a hand written list of questions to be asked of the reporting employee, D. Patzloff and Correctional Counselor S. Roacho. :( See attached list of handwritten questions and answers)
The SHO has deemed some of the questions as not relevant during this hearing and these questions are notated with N/R.

Inmate Cohea, requested as witnesses for this hearing, Sergeant Velasco, LNA Rodiles, Sergeant Erwin, and an unspecified Specialist Physician. The SHO asked Inmate Cohea what information these witnesses would provide relevant to the charges; Cohea stated that they are aware of and would testify as to his hemorrhoid condition. These witnesses were denied based on no relevant information.

Inmate Jeffries, and other unidentified inmates were also requested for this hearing to answer questions posed in the I/E report, Inmate Jeffries was denied due to having answered the requested questions and not being able to provide any additional information relevant to the charges. The questions for the unidentified inmates posed by Inmate Cohea were not asked and do not have any relevance to the charges, additionally Inmate Cohea was alone in his cell at the time this occurred and none of the requested Inmate witnesses could testify to Inmate Cohea's actions in relation to the charged violation.

Inmate Cohea also requested Correctional Officer Rosales the I/E as a witness at the hearing. Officer Rosales was not available for the hearing due to being assigned to training at the time of the hearing; additionally the questions posed by Inmate Cohea have no relevance to the hearing.

Inmate Cohea had initially requested Correctional Officer Torrent as a witness, during the hearing Inmate Cohea stated he was satisfied with Officer Torrent's answers to the I/E questions and had no further questions for him.

Inmate Cohea provided the SHO with a "Patient Health Care Education" document referencing Hemorrhoids and requested that it be submitted as evidence pursuant to CCR, Title 15 Section 3320(l) Inmate Cohea added "because I have a medical condition refer to#2 and #3 of the instructions, I was sitting in my bed suffering from my hemorrhoids and that is what I was doing."

| SIGNATURE OF WRITER | DATE SIGNED |
|---------------------|-------------|
| R. JOHNSON, Correctional Lieutenant | 10/27/07 |

| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | | 11/19/07 | 1103 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 3 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J13647 | COHEA | 09-07-B23 | CSP-CAL | 10/24/07 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☒ HEARING   ☐ IE REPORT   ☐ OTHER_____

FINDINGS: Inmate COHEA was found "**GUILTY**" of violating CCR, Section 3007, for the specific act of "Indecent Exposure" This finding was based on a preponderance of evidence submitted at the hearing, which is considered valid and does substantiate the charge. The evidence includes:

1. The reporting Employee's written report which states: "On Monday, September 17, 2007, at approximately 1120 hours, while performing my duties as BMU Facilitator/Teacher, in Housing unit B5, I was conducting my rounds meeting with the inmates in the BMU program to discuss their individualized programs. I was called back to cell B5-247, by Inmate Cohea, J13647, B5-247L the sole occupant of the cell. When I arrived at Inmate Cohea's cell door the cell light was on and I observed Inmate Cohea lying on the lower bunk wearing only his boxer shorts. Inmate Cohea was lying facing the door with his legs spread wide open with his right leg up and his boxers pulled over deliberately exposing his testicles. Inmate Cohea asked me questions for Counselor Roacho, which had nothing to do with me, therefore it is my belief that Inmate Cohea's actions and reasons for calling me over to his cell were for the purpose of lewdly and lasciviously exposing himself to me for his own sexual gratification. Inmate Cohea has been issued CDC 115's for similar behavior on the following dates: 3/11/06, 2/21/06, 4/29/04, 12/13/02, 10/13/01, 1/20/01, 1/22/99, and 7/11/95."

2. Information contained in the I/E report specifically questions posed by Inmate Cohea to Officer Torrent in which Torrent verifies that Inmate Cohea asked Torrent to close the vent due to the cell being cold and Cohea only having boxer short and a t-shirt.

**SHO NOTE:**

The SHO believes that the charge of Indecent Exposure is appropriate due the following facts. Inmate Cohea claimed to be cold as evidenced by his questions to Officer Torrent in the I/E report, Cohea had sheets and blankets, yet he chose not to cover himself up. In the questions posed by Cohea in the I/E report it appears that Cohea new the whereabouts of the reporting employee during the entire time that she was in the housing unit, indicating to the SHO that he was watching her every move. The SHO believes that Cohea did in fact call the reporting employee back to his cell and positioned himself as described in the RVR by the reporting employee. Penal Code (PC) Section 314 defines Indecent Exposure as "The willful and lewd exposure of a person, or the private parts thereof, in any public place or in anyplace where there are present other persons to be offended or annoyed thereby." It is this SHO's belief that the reporting employee was clearly offended within the definition of PC314 as evidenced by her use of the descriptors "lewdly and lasciviously" in the RVR; therefore the charge of Indecent exposure is appropriate.

It should be noted a CDC115X Mental Health assessment was completed and issued to Inmate Cohea which was evaluated by the SHO and determined to have no bearing on the hearing.

**DISPOSITION**: Inmate COHEA was assessed:

Ninety (90) Days, FORFEITURE OF CREDIT consistent with a Division "D" Offense.
Ten (10) days, Loss of Yard, beginning on 10/24/07 and ending on 11/04/07.
One hundred eighty (180) Days, Loss of Canteen, beginning on 10/24/07 and ending on 04/23/08.
One hundred eighty (180) Days, Loss of Appliances, beginning on 10/24/07 and ending on 04/23/08.
One hundred eighty (180) Days, Loss of Vendor Packages, beginning on 10/24/07 and ending on 04/23/08.
One hundred eighty (180) Days, Loss of Telephone, beginning on 10/24/07 and ending on 04/23/08.
One hundred eighty (180) Days, Loss of Personal Property, beginning on 10/24/07 and ending on 04/23/08.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| R. JOHNSON, Correctional Lieutenant | 10/27/07 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 11/11/12 | 111.3 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 4 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J13647 | COHEA | 09-07-B23 | CSP-CAL | 10/24/07 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER____ |

Inmate COHEA was referred to UCC / ICC with the recommendation of SHU Term assessment, and referred to an Institutional Psychiatrist for an evaluation per Madrid Decision prior to SHU Term implementation.

Inmate COHEA was referred to UCC / ICC with the recommendation of Program and Housing Needs and review for possible "R" suffix custody designation.

Inmate COHEA was referred to UCC / ICC for review of a possible Family Visiting restriction. Inmate Cohea has been found guilty of an offence listed under CCR, Title 15, Section 3177(b)(1)(A), as prohibiting family visiting.

Inmate COHEA was counseled, and advised of future behavior expectations.

Inmate COHEA was notified as to CCR §3327(b), Restoration of Forfeited Credits, CCR §3328, Disciplinary free periods, and CCR §3329, Extraordinary circumstances.

Inmate COHEA was advised of his rights to appeal the findings and/or disposition of the hearing, pursuant to CCR §3084.1 and CCR §3312 (b) (1) and advised he would receive a completed copy of this hearing report upon final audit by the Chief Disciplinary Officer (CDO) whose review and signature affirms, reverses, or modifies this disciplinary action and constitutes the First Level of Review for appeal purposes.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| R. JOHNSON, Correctional Lieutenant | 10/25/07 |

| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | | 11/19/07 | 1163 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT**

804 TO RECORDS: 9/14/07

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| J13647 | COHEA | | | CSP-CAL | B5-247L | 09-07-B23 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR #3007 | Indecent Exposure | | 09/17/07 | 1120 HRS. |

CIRCUMSTANCES

On Monday, September 17, 2007, at approximately 1120 hours, while performing my duties as BMU Facilitator/Teacher, in housing unit B5, I was conducting my rounds meeting with the inmates in the BMU program to discuss their individualized programs. I was called back to cell B5-247, by Inmate Cohea, J13647, B5-247L the sole occupant of the cell. When I arrived at Inmate Cohea's cell door the cell light was on and I observed Inmate Cohea lying on the lower bunk wearing only his boxer shorts. Inmate Cohea was lying facing the door with his legs spread wide open with his right leg up and his boxers pulled over deliberately exposing his testicles. Inmate Cohea asked me questions for Counselor Roacho, which had nothing to do with me, therefore it is my belief that Inmate Cohea's actions and reasons for calling me over to his cell were for the purpose of lewdly and lasciviously exposing himself to me for his own sexual gratification. Inmate Cohea has been issued CDC 115's for similar behavior on the following dates: 3/11/06, 2/21/06, 4/29/04, 12/13/02, 10/13/01, 1/20/01, 1/22/99, and 7/11/95.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ D. Patzloff, Teacher | | | BMU Facilitator | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|---|
| ▶ Catlett, Program Sergeant | | 7/25/07 | DATE    N/A | LOC.    N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | ▶ | ☐ HO  ☒ SHO  ☐ SC  ☐ FC |
| ☒ SERIOUS | | | | |

**COPIES GIVEN INMATE BEFORE HEARING**

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | ▶ J. Olivarez   OL | 9/26/07 | 1930 | 7219 of Im Cohea J13647 |
| | | | | Dated 9/17/07 |

| ☒ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| AL-FB5-07-09 | ▶ J. Olivarez   OL | 9/26/07 | 1930 | ▶ S. Olivarez   OL | 9/26/07 | 1930 |

HEARING  0273

| REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA | | | | |
|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | SIGNATURE ▶ | | DATE | TIME |

| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE |
|---|---|---|---|

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |
|---|---|---|---|

CDC 115 (7/88)

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS

PAGE____OF____

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J13647 | COHEA | 09-07-B23 | CSP-CAL | 09/17/07 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER_____

Inmate Cohea is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DPP). Inmate Cohea does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below.

Inmate Cohea is aware of this report.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| D. PATZLOFF, Teacher | | |

☒ COPY OF CDC 115-C GIVEN TO INMATE

| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|
| J. Olivarez | 9/26/07 | 1930 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| J13647 | COHEA | 3007 | 09/17/07 | CSP-CAL | 09-07-B23 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT  [X] YES  [ ] NO

## POSTPONEMENT OF DISCIPLINARY HEARING

[X] **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution.
INMATE'S SIGNATURE ▶ _____  DATE _____

[ ] **I REQUEST** my hearing be postponed pending outcome of referral for prosecution.
INMATE'S SIGNATURE ▶  DATE

DATE NOTICE OF OUTCOME RECEIVED            DISPOSITION

[ ] **I REVOKE** my request for postponement.
INMATE'S SIGNATURE ▶  DATE

## STAFF ASSISTANT

STAFF ASSISTANT
[ ] REQUESTED   [ ] WAIVED BY INMATE
INMATE'S SIGNATURE ▶  DATE

[ ] ASSIGNED   DATE            NAME OF STAFF

[X] NOT ASSIGNED   REASON  _I'm does not meet criteria in CCR 3315 (d)(2)_

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE
[X] REQUESTED   [ ] WAIVED BY INMATE
INMATE'S SIGNATURE ▶  DATE

[ ] ASSIGNED   DATE            NAME OF STAFF

[ ] NOT ASSIGNED   REASON

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
[ ] REPORTING EMPLOYEE   [ ] STAFF ASSISTANT   [ ] INVESTIGATIVE EMPLOYEE   [ ] OTHER _____ [ ] NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | [ ] | [ ] | | [ ] | [ ] |
| | [ ] | [ ] | | [ ] | [ ] |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

INVESTIGATOR'S SIGNATURE ▶  DATE

| [X] COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |
|---|---|---|---|

CDC 115-A (7/88)                    — *If additional space is required use supplemental pages* —

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**

PAGE __1__ OF __11__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

On Wednesday, September 26, 2007, I was assigned as the Investigative Employee (I.E.) for Rule Violation Report (RVR)# 09-07-B23, per CCR 3315 (d)(1)(A). Inmate COHEA expressed no objections and acknowledge receipt of all reports and/or documents pertaining to this case.

INMATE STATEMENT: " First and Foremost", I was not "Indecent Exposed" as accused by the Reporting Employee (RE) on September 17, 2007. It is alleged by the (RE) in the RVR accusation that "I called her to my cell" but thats simply not so. In fact, I had already spoken to the (RE) twice at my cell door(and had addressed all my BMU Program requirement concerns) so there simply was no need to speak to the (RE) again (or to have called her back to the cell for any reason). When she approached cell 247 for the third time asking me "Did I know who called her", which I replied "I did not know who called her, nor was I the one who alled her". As at that point I was up off of my bunk and at the cell door when this conversation took place, as I then asked the (RE) "would she inform BMU Counselor Roacho I need Two 128-Gs copied to respond to the Director's Level Appeal Branch Correspondence I had received dated August 17, 2007, (showing the (RE) these three documents at the cell door)", and all of this conversation taking place after she allegedly seen my "Indecent Exposed" Testicles.

Additionally, the evidence support that the (RE) doesn't know who "called her", as she asked several other inmates (in cell 245,246) "were they the one who "called her" prior to her approaching cell 247 asking me "Did I know who "called her". In other words, the (RE) is using the untrue statement that "I called her to cell 247" (and had my testicles exposed) to support her unfounded accusations of "Indecent Exposure". But, the truth of the matter is Idid not call the (RE) to cell 247 after I had already talked to her twice, and had no other need to speak to her again.

SECONDLY: The truth of this matter is, when the (RE) approached cell 247 (the third time) asking "Did I know who caleed her", some fifteen to twenty minutes had passed after she had previously spoken to me at cell 247 about the BMU Program Requirements. In other words, what I'm saying is, I didn't know or think that (RE) was still on "C" Section tier, in fact I had assumed she had left the tier using "B" Section stairwell, and there was no indications to make me think otherwise (because the (RE) had already told me when she first came up "C" Section stairwell that "she would talk to me when she get to me because she was starting at cell 250 and working her way up the tier, i.e., from 250 - 242, etc...). More importantly, for the (RE) to approach cell 247 without any indications she was going to return to talk to me) i.e., unannounced, doesn't warrant me sitting on my cell bunk (minding my own business) to be suddenly now classified as "Indecent Exposure". She (the (RE) can't say that my penis was erect (beause it wasn't) , nor can she say I was "Masterbating" (I wasn't). The (RE) simply states that my "Testicles was exposed" (when she approached the cell unannouced -- As she claims I "called her" some fifteen to twenty minutes eariler), which simply isn't true because I never called her, as the evidence support that the (RE) had no ideal who called her without any facts of that, and despite when she asked me did I call her (as she had asked the other inmates) I told her ", I did not call her or knew who did "call her", nevertheless she here accuses me of calling her to help support her unfounded accusation of "Indecent Exposure".

**(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| J. ROSALES, Correctional Officer | | 10/18/07 |
| GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| J. Olivarez | 10/18/07 | 1800 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

RULES VIOLATION REPORT - PART C

PAGE 2 OF 11

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

☐ SUPPLEMENTAL  ☐ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☐ HEARING  ☒ IE REPORT  ☐ OTHER_____

**THIRDLY AND FINALLY:**  As for what the (RE) saw (when she looked into cell 247 unannouced after being assumed to had left the tier), she claims that my "Testicles Exposed" (i.e., Exposed - - somehow in an indecent manner)", but thats simply isn't true.  In fact, I was sitting in the same position all three time the (RE) approached cell 247 on September 17, 2007 (i.e., when she first came up "C" Section stairwell - - which is directly in front of cell 247, when she approached cell 247 after coming from cells 250 - 248, and when she approached cell 247 unannouced after coming from cells 246 - 242, some fifteen to twenty minutes later).  I was sitting with my back against the cell's back windowed wall, legs bent, feet flat on the bunk working on a BMU packet 4 against my legs, inkpen in my hand, and each time the (RE) approached cell 247 (looking into it) I immediately raised up from the bunk and approached the cell door and spoke to the (RE).  In order for the (RE) to had seen my Testicles (on her third approach to cell 247) she would have had to be looking inside of my boxers because at no time was my testicles hangging outside of my boxers, with my legs bent, she could have very well assumed that my Testicles was "out" from her angel of looking into the cell, because when shee looked into the cell the two preivoustimes (I was sitting in the same position) she could not see my testicles, nor did she consider my testicles "Indecent Exposed" the two previous times she looked into cell 247, and the fact that she could not see my penis (when she claims she seen my "testicles" - - while "right leg up and boxers pulled over") is clear proof that I could not have been "Deliberately exposing my testicles for the purpose of lewdly and lasciviously exposing myself to (the RE) for (my own) sexual gratification, "as claimed by D. Patzloff in her RVR.

The following questions are asked in behalf of Inmate COHEA, to D. Patzloff (BMU Facilitator / Teacher) the Reporting Employee (RE).

**Q1:**    Om Monday, September 17, 2007 (i.e, the day of the incident) when you came  up "C" Section stairwell (which is right in front of cell 247 - - that I was housed in), did you look into the cell ?
**A1:**    YES.

**Q2:**    Was I sitting on my bunk (back against the back wall facing the cell door working on my BMU packet #4 on my legs, (as the packet was against my bent - up legs) ?
**A2:**    NO.

**Q3:**    You know this to be true because when I saw you reach the top of the "C" Section stairwell I immediately approached the cell door and informed you of this fact ?
**A3:**    Question (3) has been deemed "Not a question".

**Q4:**    At that point I attempted to give you my completed "packet #3, when you informed me "you would get it (and speak to me) in a minute, because you were going to start at cell 250 first and work your way up the tier (i.e, from cell 250 - 242)" ?    **(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| SIGNATURE OF WRITER  J. Rosales | DATE SIGNED |
|---|---|
| J. ROSALES, Correctional Officer | 10/15/07 |
| GIVEN BY (Staff's Signature)  J. Olivarez | DATE SIGNED  10/18/07 | TIME SIGNED  1800 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                           DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                                          PAGE __3__ OF __11__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

**A4:**    YES.

**Q5:**    So would you say you had informed me (and I knew you were soon to come back to cell 247 where I was housed) after working your way up the tier from cell 250 ?

**A5:**    YES.

**Q6:**    When you first came up "C" Section starwell on the day of the incident did you see my penis (i.e., was my penis exposed) ?

**A6:**    NO.

**Q7:**    And when you had returned to cell 247 (after going from cell 250 through 248) did you see my penis (i.e., was my penis exposed) ?

**A7:**    NO.

**Q8:**    And when you had returned to cell 247 (where I was, after going from cells 250 - 248) we talked, I give you BMU packet #3 and informed you that "I was working on completing packets 4&5, that you had giving me on Friday September 14, 2007" (which you informed me there was "no hurry to complete the remaining packets") ?

**A8:**    This question was deemed not to be a question.

**Q9:**    Before, during or after this conversation "about the completion of the BMU packets, after returning from cells 250 - 248" did you see my penis (i,e, was my penis exposed)?

**A9:**    This question was deemed not relevant as the question had already been asked inquestions 6&7 above.

**Q10:**   After you left cell 247 (and continued up the tier to cells 246,245,244,243,242, etc...) you heard what sounded like someone called you (from one of the previous cells you had been at) ?

**A10:**   YES.

**Q11:**   In fact, you had no idea who had called you at that time (or if anyone had actually called you)?

**A11:**   This question was deemed not a question.

(CONTINUED ON SUPPLEMENTAL PAGE PART C)

| SIGNATURE OF WRITER  *J. Rosales* | DATE SIGNED |
|---|---|
| **J. ROSALES, Correctional Officer** | 10/18/07 |

| | GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | J. Olivarez | 10/18/07 | 1800 |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                            DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                                    PAGE _4_ OF _11_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

**Q12:** In fact, prior to returning to cell 247 again (after going to cells 246,245,244,243,242) you had stopped at several of those cells asking the inmates in those cells "did they call you" ?

*        **(Did any claim to have called you)?**

**A12:** NO.

**Q13:** In fact, when you approached cell 247 this time (looking into it) you asked me "did I know who called you", (Yes or No), which I told you no, correct ?

**A13:** NO.

**Q14:** How long after leaving cell 247 (while at cells up the tier, (i.e., cells 246,245,244,243,242) had passed when you heard what you thought was someone "called you", Five, Ten, Fifteen minutes ?

**A14:** Maybe Two or Three minutes.

**Q15:** And what cell were you at when you heard what you thought was someone "called you"?

**A15:** Don't remember.

**Q16:** Additionally, after leaving cell 247 (going up the tier to cells 246,245,244,243,242) how much time had passed before you returned to cell 247 (where you looked into it and asked me "Did I know who called you")? Five, Ten, Fifteen minutes?

**A16:** About Two or Three minutes.

**Q17:** Would you say that after you left ell 247 (going up the tier to cells 246 - 242) enough time had passed for me to think that you had left from off "C" section tier (Possibly down "B" section stairwell)?

**A17:** NO.

**Q18:** Isn't it true, when you returned to cell 247 asking me "Did I know who called you", (where you're now stating my testicles was exposed), was I sitting in the same position that I was sitting in when you came up "C" section stairwell and came to cell 247 after leaving cells 250 - 248, (I was sitting with my back against the back window cell wall legs bent up working on the BMU packet #4 on my legs)?

**A18:** NO.

**Q19:** In other words, was I sitting in the same position each time you approached cell 247 on September 17, 2007 (all three times) ?            **(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| SIGNATURE OF WRITER *J. Rosale* | DATE SIGNED |
|---|---|
| J. ROSALES, Correctional Officer | 10/18/07 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez | 10/18/07 | 1800 |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**

PAGE __5__ OF __11__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |
|---|---|---|---|---|---|

**A19:** NO.

**Q20:** Isn't it true that my penis wasn't exposed, but you was (if true) able to see my testicles from inside my boxers (from the way I was sitting) and the angle you were looking into the cell ?

**A20:**   **This question was deemed not relevant.**

**Q21:** In fact, I was sitting in the same position when you seen me from the front (when coming up "C" section stairwell), and when you seen me from the left (coming from cells 250 - 248), but you was unable to see my testicles, correct ?

**A21:**   **This question was deemed not relevant.**

**Q22:** But when you approached cell 247 (looking into it) from the right side of the cell (from 242 - 246) from that angle you were able to see into the right side of my boxers (where you say you could see my testicles), but thats what you're calling Exposure, because my testicles was not outside of my boxers, correct ?

**A22:**   **This question was deemed not relevant.**

**Q23:** Matter of fact, the only reason you were able to see my testicles was because you looked into my boxers (not because my testicles was Indecent Exposed), correct ?

**A23:**   **This question was deemed not relevant.**

**Q24:** In fact, you can not say that my penis was "outside of my boxers", when you claim to have seen my testicles, correct?

**A24:**   **Question 24 was deemed not a question, and therefore was not answered.**

**Q25:** Can you say that when you returned to cell 247 (unbeknownst to me) asking me "Did I know who called you", that I called you or even knew you were still on the tier, correct ?

**A25:**   **Question 25 was deemed not a question, and therefore was not answered.**

**Q26:** Did I "Indecent Expose" my penis to you on September 13, 2007, Thursday when you were on "C" section tier ?

**A26:**   **This question was deemed not relevant.**

(CONTINUED ON SUPPLEMENTAL PAGE PART C)

| SIGNATURE OF WRITER    *J. Rosales* | DATE SIGNED |
|---|---|
| J. ROSALES, Correctional Officer | 10/18/07 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature)    *S. Olivarez* | DATE SIGNED    10/18/07 | TIME SIGNED    1800 |
|---|---|---|---|

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                      DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                                      PAGE __6__ OF __11__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER____ |

**Q27:** Did I "Indecent Expose" my penis to you on Friday, September 14, 2007 when you were on "C" section tier ?

**A27: This question was deemed not relevant.**

**Q28:** Were you aware (when you state in your RVR) that "I was wearing only my boxer" shorts" lying on the lower bunk, that I had not been issued any clothing sine placed back in BMU on september 13, 2007 (sue to the Program status being "Modified")?

**A28:** NO.

**Q29:** Were you aware (when you state in your RVR) that I was "lying with my legs spread wide open with my right leg up and boxers pulled over deliberately exposing my testicles", that I have a documented serious medical condition that affects the way I sit ?

**A29: The following question was deemed not relevant.**

**Q30:** When you state in your RVR that (after you had supposedly seen my "Exposed testicles"), I (at the ell door) "asked you questions for Counselor S. Roacho" (Which were not questions but were "requests") that was somehow something I could not request of you (as you state "which had nothing to do with you") ?

**A30: The following question was deemed not relevant.**

**Q31:** Do you know the difference between a "Question" and a "Request" (because your job title is Teacher) ?

**A31: The following question was deemed not relevant.**

**Q32:** Then why in your RVR you state I "asked you 'questions' for Counselor S. Roacho", When I had asked you to inform Counselor Roacho "I had specific 'Requests' for her"?

**A32: The following question was deemed not relevant.**

This concludes the questions that were asked to D. Patzloff (Teacher) (Reporting Employee).

The following three (3) questions are asked to Correctional Officer J. Torrent in behalf of Inmate COHEA I.E. report.

**(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| | SIGNATURE OF WRITER _J. Rosales_ | DATE SIGNED 10/18/07 |
|---|---|---|
| | **J. ROSALES, Correctional Officer** | |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature) _J. Olivarez_ | DATE SIGNED 10/18/07 | TIME SIGNED 1:800 |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                                          PAGE __7__ OF __11__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER _____ |
|---|---|---|---|---|---|

**Q1:**  Isn't it true that on the morning (before I went to Ad/Seg.) that I had asked you to shut the air vent "because the cell was cold" ?

**A1:**  YES.


**Q2:**  Isn't it true that I had not been issued any clothing (from the clothing room) as of Monday September 17, 2007, due to the Program status being on "Modified" (and no workers were in the clothing room for issuing clothes) ?

**A2:**  YES.


**Q3:**  In fact, when you came to cell 247 on Monday September 17, 2007, (to escort me to the Watch Office for Ad/Seg. placement), when you informed me to "get dress (because I was in my boxers and T-shirt)", I told you I had not been issued any "clothing" ?

**A3:**  YES.


This concludes the three (3) questions asked to Officer J. Torrent in behalf of Inmate COHEA.


The following Four (4) questions are to be asked to Correctional Counselor I  S. Roacho in behalf of Inmate COHEA I.E. report.


**Q1:**  Is it true that on Monday, September 17, 2007, (BMU Teacher / Coordinator D. Patzloff), had informed you "I had requested you be informed I needed copies made of some documents (i.e, CDC-128Gs) for mailing to the Directors Level Appeal Branch per a response to the Director's instructives ?

**A1:**  You asked for those things when you were in the Sallyport or your way to ASU.


**Q2:**  And when being (cuffed up and escorted out of B#5 on Monday, September 17, 2007), you informed me to "Get the copies from Counselor I, Criman in ASU ?

**A2:**  YES.


**Q3:**  Whats the inmate name and CDC# that was in cell 246 on 9/17/07, (who was in the BMU Program and in that cell since atleast 6/22/07), because I need him for questioning for the RVR of 9/17/07 ?

**A3:**  **This question was deemed not relevant.**


                          **(CONTINUED ON SUPPLEMENTAL PAGE PART C)**


| | SIGNATURE OF WRITER _J. Rosales_ | DATE SIGNED |
|---|---|---|
| | **J. ROSALES, Correctional Officer** | 10/18/07 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature)  J. Olivarez | DATE SIGNED 10/18/07 | TIME SIGNED 1800 |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                                    PAGE **8** OF **11**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |

**Q4:**    I know you knoqw who this inmate is, and additionally, I need to know where he is now housed, if moved from B5-246 since 9/17/07, what cell is he now located in ?

**A4:**    **This question was deemed not relevant.**


This concludes theFour (4) questions asked to Correctional Counselor S. Roacho in behalf of Inmate COHEA I.E. report.


The following Two (2) questions are asked to Inmate JEFFRIES, B5-245, in behalf of Inmate COHEA's I.E. report.


**Q1:**    On Monday, September 17, 2007, ( the day inmate COHEA, AKA "Preacher" went to Ad/Seg.), when BMU Coordinator Patzloff was on "C" section tier, did you hear anything between Inmate COHEA and BMU Coordinator Patzloff on that day that would have lead you to believe they were having problems between each other ?

**A1:**    NO.


**Q2:**    Isn't it true (after Coordinator Patzloff on that day had already talked to you about your BMU status), she again returned to your cell (after coming from cell 242), and asked you "Did you call her" ?

**A2:**    I don't remember.


This concludes the questions for Inmate JEFFRIES, B5-245, in behalf of Inmate COHEA's I.E. report.


The following questions are asked to Inmate in cell B5-244 (AKA) "ANT") in behalf of Inmate COHEA's I.E. report.


**Q1:**    On Monday, September 17, 2007, (the day Inmate COHEA, AKA "Preacher" went to Ad/Seg), when BMU Coordinator Patzloff was on "C" section tier, did you hear anything between Inmate COHEA and BMU Coordinator Patzloff on that day that would have lead you to believe they were having problems between each other ?

**A1:**    Inmate Refused to answer .


**Q2:**    Isn't it true (after  Coordinator Patzloff on that day had already talked to you about your BMU status), she again returned to your cell (after coming from cell 242) and asked you did you call her back?

**A2:**    Inmate Refused to answer.


This concludes the questions asked to Inmate in cell B5-244, on behalf of inmate COHEA,'s I.E. report.

**(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| SIGNATURE OF WRITER   _J. Rosales_ | DATE SIGNED  10/18/07 |
|---|---|
| **J. ROSALES, Correctional Officer** | |

| | GIVEN BY (Staff's Signature)   _S. Olivarez_ | DATE SIGNED  10/18/07 | TIME SIGNED  1800 |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | | |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                                           PAGE  9  OF  11

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER |
|---|---|---|---|---|---|

The following questions are asked to Inmate in B5-246 (as of 09/17/07)

**Q1:**   On Monday, September 17, 2007, (the day Inmate COHEA, AKA "Preacher" went to Ad/Seg.), when BMU Coordinator Patzloff was on "C" section tier , did you hear anything between Inmate COHEA and BMU Coordinator Patzloff on that day that would have lead you to believe they were having problems between each other?

**A1:**   UNABLE TO IDENTIFY.

**Q2:**   Isn't it true (after Coordinator Patzloff on that day had already talked to you about your BMU status), she again returned to your cell (after coming from cell 242) and asked you "did you call her" ?

**A2:**   UNABLE TO IDENTIFY.

**Q3:**   After Coordinator Patzloff talked to me at cell 247 door (before leaving the tier), did she appear to be mad about something(concerning me) ?

**A3:**   UNABLE TO IDENTIFY.

An attempt at asking these questions in behalf of Inmate COHEA, J-13647, was made, however it is unknow the identity of this witness.

The following question was asked to Correctional Sergeant S. Velasco (ASU - SGT.) in behalf of Inmate COHEA's I.E. report.

**Q1:**   In the week of (August 20 - 300, 2007, or September 01-13, 2007) while processing the outline for ASU (E-Pod) Yard, you told me to turn around (so you could see what was it on the back of my boxers) and as I turned around to the back, you seen that I had started bleeding into the back of my boxers (suddenly). You asked me what was going on, as I explained to you that I have "Bleeding Hemmorrhozos" and sometimes it just starts to bleed like that. You then instructed me that I would have to change my boxers (that had the blood on them if I was going on the yard). As I asked you, could I bring them (the bloody boxers on the yard and wash them), to which you instructed me to just leave the bloody boxers in the cell sink and I could wash them when I returned from the yard, which I complied. Is the above statement concerning my "bleeding hemorrhoids" ?

**A1:**   The following question was deemed not relevant.

**(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| SIGNATURE OF WRITER   *J. Rosales* | DATE SIGNED 10/18/07 |
|---|---|
| **J. ROSALES, Correctional Officer** | |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature)   *J. Olivarez* | DATE SIGNED 10/18/07 | TIME SIGNED 1800 |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**

PAGE 10 OF 11

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER |

The following Two (2) questions are asked to Correctional Sergeant D. Erwin, in behalf of Inmate COHEA's I.E. report.

**Q1:** On June 22, 2007, (prior to escorting to the Program Office) I had pointed out to you that I had "Bleeding Hemmorroids" and in the toilet I had pointed out to you the blood that was in the toilet ?

**A1:** **The following question was deemed not relevant.**

**Q2:** And when escorted to the Program Office (On June 22, 2007) the LNA was informed of my "bleeding hemmoroids", which was at time documented on the CDC-7219 form ?

**A2:** **The following question was deemed not relevant.**

This concludes the questions asked to Correctional Sergeant D. Erwin, in behalf of Inmate COHEA's I.E. report.

The following Three (3) questions were in regards to Medical Records and Health care, in behalf of inmate COHEA's I.E. report.

**Q1:** Isn't it true that my Medical Records has in it documented proof that I have "Bleeding Hemmorroids", and have been treated for it since 2005, (before coming to this prison)?

**A1:** **The following question was deemed not relevant.**

**Q2:** Does my Medical Record also illustrate that I'm still suffering from this condition ?

**A2:** **The following question was deemed not relevant.**

**Q3:** Isn't it true that my "Bleeding Hemmorroids" condition is a condition that me and the "Medical staff" has agreed (other than surgery) I would have to make the best of my condition .......... **The rest of this question is unreadable and no original.**

**A3:** **The following question was deemed not relevant.**

**(CONTINUED ON SUPPLEMENTAL PAGE PART C)**

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | J. ROSALES, Correctional Officer | 10/18/07 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | S. Olivarez | 10/18/07 | 1800 |

CDC 115-C REVISED (3/98)

STATE OF CALIFORNIA                                           DEPARTMENT OF CORRECTIONS AND REHABILITATIONS

**RULES VIOLATION REPORT - PART C**                          PAGE _11_ OF _11_

| CDC.NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| J-13647 | COHEA | 09-07-B23 | CSP-CAL IV | 9/26/07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER____ |

**REPORTING EMPLOYEE'S STATEMENT:** "On Monday, September 17, 2007, at approximately 1120 hours, while performing my duties as BMU Facilitator/Teacher, in housing unit B5, I was conducting my rounds meeting with the inmates in the BMU program to dicuss their individualized programs. I was called back to cell B5-247, by Inmate COHEA, J-13647, B5-247L, the sole occupant of the cell. When I arrived at Inmate COHEA's cell door the cell light was on and I observed Inmate COHEA lying on the lower bunk wearing only his boxer shorts. Inmate COHEA was lying facing the door with his legs spread wide open with his right leg up and his boxers pulled over deliberately exposing his testicles. Inmate COHEA asked me questions for Counselor Roacho, which had nothing to do with me, therefore it is my belief that Inmate COHEA's actions and reasons for calling me over to his cell were for the purpose of lewdly and lasciviously exposing himself to me for his own sexual gradtification. Inmate COHEA has been issued CDC-115's for similar behavior on the following dates; 3/11/06, 2/21/06, 4/29/04, 12/13/02, 10/13/01, 1/20/01, 1/22/99, and 7/11/95.

This concludes my statement.

**Inmate requestes witnesses to be present at the hearing:YES.**

**Inmate requests Reorting Employee to be present at the hearing: YES.**

**Inmate requests I.E. to be present at the hearing:YES.**

**Inmate requests staff witnesses to be present at the hearing: YES.**

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| J. ROSALES, Correctional Officer | | 10/18/07 |
| GIVEN BY (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| J. Olivarez | 10/18/07 | 1800 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE |

CDC 115-C REVISED (3/98)

*In his Request*

## REVIEWING CUSTODY SUPERVISOR

A Rules Violation Report (RVR), CDC 115, has been written on the following inmate, who requires a mental health assessment.

Inmate Name: _COHEA_      CDC Number: _J13647_

RVR Log Number: _09-07-C23_ Date of Violation: _9/17/07_ Housing: _B 5-247L_

Specific Act Charged: _indecent Exposure_

The inmate's current Mental Health Level of Care is: (check one)
[X] NOT IN MHSDS PROGRAM*   [ ] CCCMS*   [ ] EOP   [ ] MHCB   [ ] DMH
*CCCMS AND NON-MHSDS PROGRAM PARTICIPANTS WILL BE REFERRED FOR A MENTAL HEALTH ASSESSMENT FOR "BIZARRE, UNUSUAL OR UNCHARACTERISTIC" BEHAVIOR.

Sent to Mental Health: _10/11/07_    By: _M. ZBB_    / _[signature]_
          Date          Print Name        Signature

RECEIVED Returned to: _10/16/07_ By: _10/16/07_ (CCCMS and non-MHSDS, 5 working days; EOP/MHCB/DMH, 15 calendar days)

OCT 11 2007    B Facility

### MENTAL HEALTH CLINICIAN
Use "lay terms" for responses

CA Mental Health confidential interview: _25 Sept 07_    (Inmate informed of non-confidentiality).
                       Date

_Original form returned to Fac B Capt W Price & Cc-II J Anaya on 27 Sept 07_

1. CCCMS/NON-MHSDS only. Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate the need for the assignment of a Staff Assistant?
[ ] Yes   [X] No   Explain "yes" response _____

2. In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the RVR? [ ] Yes [X] No Explain "yes" response: _____

3. If the inmate is found guilty of the offense, are there any mental health factors that the hearing officer should consider in assessing the penalty? [ ] Yes [X] No Explain "yes" response: _____

D F Middleton PhD
Psychologist
CAL
760 348 7000 x5456

| Institution: | Clinician: | Signature: _[signature]_ | Date: _11 OCT 07_ |
|---|---|---|---|
| Received by (custody staff) | Name: | Signature: | Date: |

Distribution: Original: Central File with adjudicated CDC 115; First copy: Unit Health Record; Second copy: Inmate

---

| RULES VIOLATION REPORT: MENTAL HEALTH ASSESSMENT CDC 115-X (11/02) | Inmate Name: (Last, First, MI) |
|---|---|
| | CDC Number: |
| *Attachment # 6* | DOB: |

STATE OF CALIFORNIA      DEPARTMENT OF CORRECTIONS

I INMATE COHEA (J-13647) SUBMIT THE FOLLOWING "RVR" STATEMENT" TO THE SHO AND FOLLOWING QUESTIONS TO BE ASKED AT THE "RVR" HEARING" AND REQUEST ALL QUESTIONS AND ANSWERS (ALONG WITH THIS STATEMENT) TO BE ENTERED INTO THE OFFICIAL RECORD OF THE RVR PROCEEDINGS.

INMATE COHEA'S STATEMENT FOR "RVR" HEARING FOR RVR LOG# 09-02-B03 BY D. PATZLOFF OF 9/17/07

I'm COMPELLED TO ASSERT, D. PATZLOFF's 9/17/07 DATED "INCIDENT REPORT" AND 9/21/07 DATED "RVR" CLEARLY ILLUSTRATE THAT SHE DECIDED TO USE DECEIT, LIES AND MISREPRESENTATIONS IN HER ACCUSATIONS OF "INDECENT EXPOSURE" AGAINST ME TO SATISFY HER ABILITY TO HERE UNJUSTIFIABLY MANIPULATE THE DEPARTMENT'S DISCIPLINARY SYSTEM. AND D. PATZLOFF's DECEIT, LIES AND MISREPRESENTATION OF THE FACTS IS FURTHER ILLUSTRATED IN HER RESPONSES (i.e, HER "ANSWERS") TO MY QUESTIONS TO HER THROUGH THE INVESTIGATIVE EMPLOYEE REPORT FILED BY (C/O J. ROSALES, "I.E.") DATED OCTOBER 18, 2007.

FIRST AND FOREMOST, D. PATZLOFF's 9/17/07 "INCIDENT REPORT" STATES THAT AFTER SHE SEEN MY "TESTICLES WERE EXPOSED" SHE STATED TO ME SHE "TOLD ME WHEN SHE'S HERE THAT I NEED TO COVER MYSELF UP." BUT, THAT STATEMENT IS NOT MENTIONED ANYWHERE IN HER "RVR" DATED 9/21/07. I'm COMPELLED TO ASSERT, THAT THAT STATEMENT (i.e, EVIDENCE) WAS/IS TO IMPORTANT TO HAVE BEEN EXCLUDED FROM THE RVR (OR TO HAVE BEEN FORGOTTEN BY D. PATZLOFF WHEN FILING HER "RVR" ON 9/21/07 JUST FIVE (5) DAYS AFTER MAKING THIS STATEMENT AS AN ENTRY IN THE "INCIDENT REPORT"). ITS MY ASSERTION THAT D. PATZLOFF NEVER MADE THE "STATEMENT" TO ME AND THATS WHY IT APPEARS IN THE "INCIDENT REPORT" AND NOT IN THE "RVR", ITS SIMPLY A LIE, BECAUSE D. PATZLOFF NEVER STATED THAT TO ME, THATS WHY SEE COULDN'T REMEMBER THE LIE FIVE DAYS LATER AND FORGOT TO PUT IT INTO HER "RVR" ACCUSATIONS.

SECOND, D. PATZLOFF STATES IN BOTH THE 9/17/07 "INCIDENT REPORT" AND 9/21/07 "RVR" THAT WHEN SHE "ARRIVED" AT MY CELL DOOR, MY "LIGHT WAS ON"." BUT, THE FACT OF THE MATTER IS, THE LIGHT STAYS "ON" (THERES NO CUT-OFF SWITCH), SO THIS STATEMENT IS A CLEAR ILLUSTRATION OF DECEIT RELATING TO THE FACTS. MOREOVER, CONCERNING THIS "LIGHT" BEING ON MATTER, D. PATZLOFF USING THE WORD "ARRIVED" AT MY CELL DOOR, IS ALSO DECEPTIVE BECAUSE D. PATZLOFF HAD BEEN TO MY CELL DOOR TWO (2) PREVIOUS TIMES (PRIOR TO THIS SO CALLED "ARRIVAL") FIFTEEN TO TWENTY MINUTES EARLIER AND MY "LIGHT" WAS ON

(OVER)

EACH OF THOSE TIMES, TOO (AS SHE ALSO LIES ABOUT THE "ARRIVAL" TIME BEING "TWO OR THREE MINUTES", WHEN SHE KNOWS "FIFTEEN TO TWENTY MINUTES" HAD EXPIRED BEFORE SHE "RETURNED" TO MY CELL CLAIMING MY "TESTICLES WERE EXPOSED".)

THIRD, D. PATZLOFF'S DESCRIPTION OF MY POSITION ON MY BUNK WHEN SHE "ARRIVED" AT MY "CELL DOOR" IS ALSO A DECEPTIVE MISREPRESENTATION OF THE FACTS FROM HER 9/17/07 "INCIDENT REPORT" STATEMENT AND HER (FIVE DAYS LATER) "RVR" DATED 9/21/07 STATEMENT, BECAUSE SHE STATES, WHEN SHE "ARRIVED" AT MY CELL DOOR I WAS "LYING" ON MY BUNK "WEARING ONLY MY BOXER SHORTS," THIS STATEMENT IS BOTH LIES AND DECEIT BECAUSE I WAS NOT "LYING" ON MY BUNK, I WAS "SITTING" ON MY BUNK BACK AGAINST THE BACK (WINDOW/TO) WALL "LEGS BENT UP" WRITING ON THE BAILL PACKET #4 FORM, WHICH D. PATZLOFF HAS CLEARLY MISREPRESENTED (BECAUSE SHE CAN), AS SHE MISREPRESENTS THE FACT THAT I WAS "WEARING ONLY MY BOXER SHORTS" (AS IF I SHOULD HAVE BEEN WEARING SOME "PANTS"), BUT THE FACTS OF THIS DECEPTION IS I HAD NOT BEEN ISSUED ANY "CLOTHING, i.e., PANTS" SINCE BEING PLACED BACK IN BAILL ON SEPTEMBER 13, 2007 (SO ON 9/17/07 WHEN SHE "ARRIVED" AT MY CELL DOOR, "BOXER SHORTS" WAS ALL I HAD TO WEAR), ALONG WITH ONE T-SHIRT WHICH I WAS WEARING (BECAUSE THE CELL WAS COLD).

AND ADDITIONALLY, REGARDING WHAT SHE STATES SHE SAW WHEN SHE ARRIVED AT MY CELL DOOR, SHE STATES IN HER 9/17/07 "INCIDENT REPORT" THAT "MY LEGS WERE WIDE OPEN, MY RIGHT LEG WAS UP, AND MY SHORTS WERE PULLED OVER SO MY TESTICLES WERE EXPOSED AND HANGING DOWN." BUT, HER 9/21/07 (FIVE DAYS LATER) "RVR" STATEMENT (LIES) AND MAKES A DRASTIC ACCUSATIONAL CHANGE, AS SHE STATES THAT, "I WAS LYING FACING THE DOOR WITH MY LEGS SPREAD WIDE OPEN WITH MY RIGHT LEG UP AND MY BOXERS PULLED OVER DELIBERATELY EXPOSING MY TESTICLES." HERE, PATZLOFF CHANGES HER 9/21/07 "RVR" STATEMENT (FROM HER 9/17/07 DAY OF THE INCIDENT STATEMENT) TO IMPLANT CERTAIN DECEPTIVE WORDS SUCH AS "FACING THE DOOR" AND "DELIBERATELY" TO SOMEHOW SUPPORT HER CLEARLY LACK OF FACTUAL BASE (TO HER "INDECENT EXPOSURE" ACCUSATION).

MOREOVER, D. PATZLOFF DECEPTIVELY USES THE STATEMENT THAT MY BOXER SHORTS WERE "PULLED OVER" TO SOMEHOW GIVE SUBSTANCE TO HER FALSE ACCUSATION OF MY "TESTICLES" WAS "HANGING DOWN (IN HER "INCIDENT REPORT")" WHICH SHE FAILS TO ALLEGE IN HER 9/21/07 (5 DAYS LATER) "RVR" ANYTHING ABOUT MY "TESTICLES WERE HANGING DOWN'." I'M COMPELLED TO ASSERT, THIS CHANGE OF MISSING ALLEGATIONS (EVIDENCE) FROM THE 9/17/07 "INCIDENT REPORT" TO THE 9/21/07 "RVR" IS BECAUSE THE "TESTICLES WERE HANGING DOWN" WAS/IS A LIE, MAKING THIS LIE EASY TO FORGET FIVE DAYS LATER WHEN D. PATZLOFF FILED HER MISREPRESENTATION(S) IN HER 9/21/07 "RVR".

(SEE NEXT PAGE STATEMENT CONTINUED)

③

NEVERTHELESS, D. PATZLOFF'S 7/17/07 "INCIDENT REPORT" AND 9/11/07 "RVR" STATEMENT THAT MY "BOXER SHORTS WERE 'PULLED OVER'" (DESPITE BEING A DECEPTIVE LIE, BECAUSE PATZLOFF CANNOT SAY SHE SAW ME PULL MY BOXER SHORTS OVER), HERE IS A FACTUAL MISREPRESENTATION BECAUSE WHAT PATZLOFF'S ALLEGATION OF MY "BOXER SHORTS WERE 'PULLED OVER'" CLEARLY ILLUSTRATE THAT NEITHER MY "TESTICLES OR PENIS" WERE OUTSIDE OF MY BOXERS, IN OF-EATING PATZLOFF WAS LOOKING INSIDE MY BOXER SHORTS,

FOURTH, D. PATZLOFF'S DECEPTION REGARDING HER 9/17/07 STATEMENT IN HER "INCIDENT REPORT" CHANGING ALLEGATIONS IN HER 9/11/07 "RVR" STATEMENT IS FURTHER ILLUSTRATED WHEN SHE STATES (AFTER SHE LOOKED INTO MY CELL, AS SHE ALLEGE SEEING MY "TESTICLES"—WITHOUT SEEING MY PENIS—ALLEGING MY "TESTICLES WERE 'HANGING DOWN'"), I ASKED HER (SUPPOSEDLY) "QUESTIONS" FOR COUNSELOR ROACHO, WHICH HAD NOTHING TO DO WITH HER. BUT, I'M COMPELLED TO ASSERT, PATZLOFF'S ALLEGATIONS OF TALKING TO ME "AFTER" (SHE CLAIMS I DELIBERATELY EXPOSED MY "TESTICLES" TO HER) AND "AFTER" (SHE CLAIMS SHE HAD ALREADY TOLD ME "WHEN SHE'S HERE, i.e. ON 5 BLOCK 'C' SECTION TIER) THAT I NEEDED TO COVER MYSELF UP"), BUT, YET SHE TAKES THE TIME TO STAND THERE AND HAVE A CONVERSATION WITH ME REGARDING "COUNSELOR ROACHO" (WHICH SHE SAYS HAD NOTHING TO DO WITH HER"). THESE TWO MIXED REACTIONS DOESN'T ADD UP, EITHER SHE'S MAD ABOUT ME "EXPOSING MY 'TESTICLES' DELIBERATELY" AND GOES ON DOWN THE STAIRWELL (WHICH IS RIGHT IN FRONT MY CELL) TO REPORT ME AS NECESSARY OR SHE'S GOT TIME TO STAND THERE AND HAVE A CONVERSATION BECAUSE SHE'S NOT MAD BECAUSE KNOWS I DIDN'T "DELIBERATELY EXPOSE MY 'TESTICLES'" TO HER, THATS WHY SHE STANDS THERE AND CONTINUES TO TALK TO ME AT THE CELL DOOR, SHE KNEW THERE WAS NOTHING "DELIBERATE" GOING ON CONCERNING "EXPOSURE",

MOREOVER, THE FACT THAT PATZLOFF'S CLAIM OF ME "CALLING HER BACK TO MY CELL" FOR THE PURPOSE OF "LEWDLY AND LASCIVIOUSLY EXPOSING MYSELF TO HER FOR MY OWN 'SEXUAL GRATIFICATION'", HERE DOESN'T PAN-OUT (ESPECIALLY SINCE SHE'S ALLEGING I'M "LYING-IN-WAIT" FOR HER TO COME BACK TO THE CELL DOOR AFTER CALLING HER). BECAUSE, IF PATZLOFF "BELIEF (WHICH SHE HAS CLAIMED AS THE BASIS OF HER ACCUSATIONS—NOT THAT SHE CLAIMS TO KNOW THAT MY INTENTIONS WERE TO 'DELIBERATELY EXPOSE MY TESTICLES' TO HER)" THAT "JUST HAVING MY 'TESTICLES HANGING DOWN' SO SHE COULD SEE (WITHOUT ME DOING ANYTHING BUT SITTING THERE FOR A SECOND FOR HER TO SEE—AS SHE CLEARLY STATES IN HER 9/17/07 'INCIDENT REPORT' THAT I 'IMMEDIATELY JUMPED UP' AND APPROACHED THE CELL DOOR TO TALK TO HER)" SOMEHOW IS AN ACT OF "SEXUAL GRATIFICATION" OR IS SOMEHOW AN ACT OF "LEWDLY AND LASCIVIOUSLY" BEHAVIOR, I THINK NOT. IN FACT, THESE ACTIONS THEMSELVES AS DESCRIBED BY D. PATZLOFF DOESN'T EVEN IN THE SIMPLEST SENCE DEMONSTRATE "SEXUAL GRATIFICATION" OR OF BEING "LEWDLY AND LASCIVIOUSLY" BEHAVIOR. JUST BECAUSE D. PATZLOFF MAKES THE ALLEGATION ME "CALLING HER BACK TO MY CELL AND HER SAYING WHEN SHE GOT TO MY DOOR SHE SEES MY 'HANGING DOWN TESTICLES' FOR A SECOND BEFORE I GOT UP AND WENT TO THE DOOR (AS SHE ALLEGES SEEING THROUGH MY 'PULLED OVER UP BOXER SHORTS'); THERE STILL MUST BE EVIDENCE OF ME BEING "INDECENT EXPOSED",

(OVER)

"SEXUALLY GRATIFICATION AND MYSELF AND A "LEWDLY (4 AND LASCIVIOUSLY" EXPOSING MANNER TO CONSTITUTE THIS BEHAVIOR. NOT AS HERE, JUST D. PATZLOFF's UNFOUNDED ACCUSATIONS OF "INDECENT EXPOSURE" (WHICH WE HAVE HERE IS A <u>CLAIM</u> OF ME "CALLING HER BACK TO THE CELL" (THAT PATZLOFF <u>CAN'T</u> PROVE I CALLED HER BECAUSE I <u>DIDN'T</u>) ADDED TO D. PATZLOFF's <u>CLAIM</u> OF HER "QUICK SECOND(s)" VIEW OF MY "HANGING DOWN 'TESTICLES' IN MY 'PULLED OVER' BOXER SHORTS) (WHICH HERE THERE'S NO PROOF THAT I <u>PULLED OVER</u> MY BOXER SHORTS); WHICH NEVERTHELESS STILL CONSTITUTES MY "TESTICLES" <u>WERE</u> <u>INSIDE</u> OF MY BOXER SHORTS WHEN SHE CLAIMS TO HAVE SEEN MY "TESTICLES (WITHOUT SEEING MY 'PENIS') "<u>DOESN'T</u> WARRANT ME HERE BEING HELD RESPONSIBLE FOR WHAT D. PATZLOFF's "<u>BELIEF</u>" IS OF WHAT I WAS DOING (WHICH WAS NOTHING MORE THAN JUST SITTING ON MY BUNK), AND NOTHING ELSE AS ALL OF THE FACTS PROVE. NEVERTHELESS, D. PATZLOFF ACCUSATIONS OF WHAT SHE "BELIEVES", SHE MUST HAVE FACTUAL EVIDENCE, NOT JUST HER "BELIEF", AND THERE'S <u>NO</u> FACTUAL EVIDENCE OF ME "CALLING HER" OR ME "DELIBERATELY EXPOSING MYSELF", THERE <u>TRUELY</u> HAS TO BE MORE TO HER ACCUSATIONS TO SUPPORT "INDECENT EXPOSURE" THEN THE "BELIEFS".

    <u>FIFTH AND FINALLY</u>, D. PATZLOFF HAS CLAIMED <u>THAT</u> <u>AFTER</u> SHE LEFT MY CELL (247) AND SPOKE TO THE INMATES IN CELLS 246, 245, 244, 243, 242 ETC... <u>BEFORE</u> RETURNING TO MY CELL "(AFTER I CALLED HER BACK)" AS SHE CLAIMED SHE SAW MY "TESTICLES", THAT SHE WAS ONLY GONE FROM MY CELL "TWO TO THREE MINUTES" <u>BEFORE</u> SHE RETURNED TO SEE THAT MY "TESTICLES" WERE <u>EXPOSED</u>, HERE AGAIN, D. PATZLOFF HAVE USED DECEPTION, LIES AND MISREPRESENTATION TO SUPPORT HER ALLEGATION OF MY "INDECENT EXPOSURE". BECAUSE I KNOW FOR A <u>FACT</u> THAT D. PATZLOFF SPOKE TO THE INMATE IN CELL 246 (AFTER LEAVING MY CELL) OVER FIVE MINUTES BECAUSE THE INMATE IN CELL 246 WAS SCHEDULED TO GO TO UCC (COMMITTEE) THE FOLLOWING DAY (TUESDAY SEPTEMBER 18, 2007) TO BE <u>RELEASED</u> FROM THE BMU PROGRAM, AND I <u>PERSONALLY</u> HEARD THEM TALKING FOR <u>OVER FIVE MINUTES</u> ABOUT THEIR EXPECTATIONS AT THE UCC COMMITTEE HEARING (FOR TUESDAY SEPTEMBER 18, 2007). AND <u>I KNOW</u> FOR SURE THAT AT LEAST SHE SPENT THREE TO <u>FOUR MINUTES</u> TALKING TO THE TWO INMATES IN CELLS 245 AND 244, BECAUSE BEFORE D. PATZLOFF CAME UP ON "C" SECTION TOP TIER THE INMATES IN CELLS (246, 245, 244) WERE EXERCISING TOGETHER (IN THEIR INDIVIDUAL CELLS), TO WHICH THEY STOP DURING THEIR CONVERSATION WITH D. PATZLOFF (AS OVER TEN MINUTES HAD PASSED BEFORE THEY STARTED BACK TO EXERCISING FOLLOWING SPEAKING TO D. PATZLOFF). AS D. PATZLOFF CONTINUED UP THE TIER TO CELLS 243, 242 AND ETC... SPEAKING TO THE REMAINING BMU PROGRAM INMATES ON "C" SECTION UPPER TIER. AND WHEN D. PATZLOFF RETURNED TO MY CELL <u>ASKING</u> "DID I KNOW WHO CALLED HER", SOME FIFTEEN TO TWENTY MINUTES HAD PASSED (AND SHE HAD <u>COMPLETED</u> HER CONVERSATIONS WITH THE BMU INMATES FROM 246-242 ETC...) <u>PRIOR</u> TO HER RETURN TO MY CELL, AS WHEN SHE COMPLETED TALKING TO ME SHE SIMPLY WALKED DOWN "C" SECTION STAIRWELL TO LEAVE THE TIER.

       (SEE NEXT PAGE STATEMENT CONTINUES)

D. PATZLOFF HAS DECEPTIVELY LIED AND MISREPRESENTED THE FACTS REGARDING HOW LONG IT WAS BEFORE SHE "RETURNED" TO MY CELL TO BE "TWO TO THREE MINUTES", BUT, THE <u>EVIDENCE</u> CLEARLY ILLUSTRATE THAT D. PATZLOFF'S RETURN TO MY CELL (247) TOOK OVER TWENTY MINUTES. D. PATZLOFF WANTS TO BE BELIEVED THAT IT TOOK HER ONLY "TWO TO THREE MINUTES" TO TALK TO THE BMU INMATES IN CELLS 246, 245, 244, 243, 242 × AND ETC... (<u>AFTER</u> LEAVING MY CELL (247) FOR HER CONVERSATIONS WITH THE OTHER BMU INMATES ON "C" SECTION UPPER TIER. BUT, I'm COMPELLED TO ASSERT, THATS SIMPLY IMPOSSIBLE, AND A LIE TO COVER-UP THE TRUTH.

## END OF RVR HEARING STATEMENT

### QUESTIONS REGARDING MY DUE PROCESS RIGHTS OF I.E. REPRESENTATION BY J. ROSALES C/O.

(ROSALES QUESTIONS)

Q.1. YOU STATE IN YOUR I.E. REPORT THAT "INMATE COHEA EXPRESSED NO OBJECTIONS AND ACKNOWLEDGE RECEIPT OF ALL REPORTS AND/OR DOCUMENTS PERTAINING TO THE CASE"; WHEN DID I DO THAT (WHEN, WHERE AT AND ON WHAT DAY)?

A.1.

Q.2. WHO EXACTLY WAS THE PERSON WHO MADE THE DETERMINATION REGARDING MY REQUESTED QUESTIONS THAT YOU DIDN'T ASK TO B "NOT RELEVANT"?

A.2.

Q.3. WHO DEEMED MY QUESTIONS #8 TO THE (RE) TO BE "NOT A QUESTION"?

A.3.

Q.4. WHO DEEMED MY QUESTION #11 TO THE (RE) TO BE "NOT A QUESTION"?

A.4.

Q.5. WHO CHANGED MY QUESTION #12 TO THE (RE) AND ADDED "(DID ANY CLAIM TO HAVE CALLED YOU)"?

A.5.

Q.6. WHO DEEMED MY QUESTIONS #24 + #25 TO ~~THE~~ (RE) TO BE "NOT A QUESTION"?

A.6.

(OVER)

Q.7. WHY YOU _DIDN'T_ ASK QUESTIONS #3 + #4 (OF COUNSELOR ROACHO) REGARDING THE INMATE THAT WAS IN CELL B-5-246 ON 9/17/07 (FOR YOUR 9/24/07 I.E. REPORT)?

A.7.

Q.8. WHY YOU _DIDN'T FIND AND ASKED_ THE INMATE THAT WAS IN CELL B-5-246 ON 9/17/07 THE THREE (3) REQUESTED QUESTIONS I HAD FOR HIM (WHEN YOU SIMPLY STATE IN YOUR I.E. REPORT OF 9/26/07 THAT THE INMATE WAS "UNABLE TO IDENTIFY")?

A.8.

Q.9. WAS THE INMATE (OF CELL B-5-246) IN THAT CELL WHEN YOU CONDUCTED YOUR INTERVIEWS ON 9/24/07 (OR WAS THE INMATE TRANSFERRED OUT OF CALIPATRIA STATE PRISON)?

A.9.

Q.10. WHY YOU _DIDN'T_ QUESTION SERGEANT S. VELASCO (ASU-SGT), SERGEANT D. ERWIN, AND REGISTER NURSE "RODILES" AND DR. "OH" REGARDING THE QUESTIONS I PROVIDED TO BE ASKED OF THEM?

A.10.

---

### QUESTIONS FOR COUNSELOR I, S. ROACHO

Q.1. I NEED TO KNOW DID D. PATZLOFF TELL YOU THAT I HAD REQUESTED HER TO INFORM YOU I NEEDED SOME COPIES MADE (PRIOR TO YOU SEEING ME BEING ESCORTED TO THE WATCH OFFICE ON 9/17/07)? (YES OR NO)

A.1. NO.

Q.2. DID YOU HAVE A CONVERSATION WITH D. PATZLOFF ON 9/17/07 WHEN SHE FIRST CAME FROM OFF OF "C" SECTION TIER SPEAKING TO THE BMU PROGRAM INMATES? (YES OR NO)

A.2. Yes we did.

Q.3. AT THAT TIME DID D. PATZLOFF MENTION ANYTHING ABOUT ANY "REQUEST" TO HAVE YOU MAKE COPIES FOR ME; AND (IF SHE DID) WHAT DID SHE MENTION?

A.3. NO.

(QUESTION FOR (RE) D. PATZLOFF)

Q.1. HOW WAS I SITTING WHEN YOU CAME UP "C" SECTION STAIRWELL (WHILE LOOKING INTO THE CELL)?

A.1. You were standing.

Q.2. WHAT DID YOU SEE ME DOING WHEN YOU CAME UP "C" SECTION STAIRWELL (WHILE LOOKING INTO THE CELL)?

A.2. Stand there asking questions.

Q.3. WHAT DID YOU FIRST SAY TO ME WHEN YOU ARRIVED AT CELL 247 AT THE TIME YOU CLAIM TO HAVE SEEN MY "TESTICLES"?

A.3. I said did you call me.

Q.4. WHEN DID YOU REALIZE WHO CALLED YOU?

A.4. When I got to your cell.

Q.5. ISN'T IT TRUE, AFTER LEAVING CELL 247 (MY CELL), YOU SPOKE TO THE INMATE IN CELL 246 OVER FIVE MINUTES DURING THAT TIME (BECAUSE HE WAS SCHEDULED FOR COMMITTEE THE NEXT DAY, AND WAS TO BE RELEASED FROM BMU PROGRAM)? (YES OR NO)

A.5.        N/R

Q.6. DO YOU REMEMBER THE INMATE IN 246 (SCHEDULED TO BE RELEASED FROM BMU THE NEXT DAY) NAME? (WHAT IS HIS NAME)?

A.6.        N/R

Q.7. IF YOU REALLY TRY TO REMEMBER, COULD YOU TELL ME WHAT CELL YOU WERE AT WHEN YOU HEARD SOMEONE CALL YOU?

A.7.   NO last one or 2 cells.

Q.8. AFTER ASSUMING IT WAS ME WHO "CALLED YOU", DID YOU ASK ANY OF THE INMATES IN CELLS (250-248) DID THEY CALL YOU (YES OR NO)? DID YOU ASK ANY OF THE INMATES IN CELLS (244-246) DID THEY CALL YOU? (THIS TWO QUESTIONS REQUIRE TWO ANSWERS)

A.8.    NO

(OVER)

Q.9. AFTER TALKING YOU JUST LEFT DOWN "C" SECTION STAIRWELL (WITHOUT ASKING THE INMATES IN CELL 250-248) "DID THEY CALL YOU" CORRECT? (YES OR NO)     N/R

A.9.

Q.10. ITS VERY POSSIBLE THAT ONE OF THE INMATES IN CELLS 250-248 HAD CALLED YOU BACK? BUT YOU NEVER CHECKED WITH THOSE INMATES BEFORE YOU LEFT THE TIER CORRECT? (YES OR NO) (2 QUESTIONS)

A.10.A.   NO

A.10.B.   N/R

Q.11. HOW MUCH TIME YOU SPENT TALKING TO THE INMATE IN CELL 246 (WHEN YOU WERE MAKING YOUR ROUNDS)?

A.11.   N/R

Q.12. HOW MUCH TIME YOU SPENT TALKING TO THE INMATE IN CELL 245 (WHEN YOU WERE MAKING YOUR ROUNDS)?

A.12.   N/R

Q.13. HOW MUCH TIME YOU SPENT TALKING TO THE INMATE IN CELL 244 (WHEN YOU WERE MAKING YOUR ROUNDS)?

A.13.   N/R

Q.14. HOW MUCH TIME YOU SPENT TALKING TO THE INMATE IN CELL 243 (WHEN YOU WERE MAKING YOUR ROUNDS)?

A.14.   N/R

Q.15. AND HOW MUCH TIME YOU SPENT TALKING TO THE OTHER INMATES IN THE BMU PROGRAM ON THAT END OF THE TIER (WHEN YOU WERE MAKING YOUR ROUNDS)?

A.15.   N/R

Q.16. AND ALL THESE INMATES CONVERSATIONS TOOK PLACE (PRIOR TO) YOUR RETURN TO CELL 247 (MY CELL) CORRECT? (YES OR NO)

A.16.   N/R

Q.17. WOULDN'T YOU SAY THE TIME YOU SPENT TALKING TO THESE OTHER INMATES (PRIOR TO YOUR RETURN TO MY CELL "WHEN YOU SAY YOU SEEN MY "TESTICLE") TOOK LONGER THEN "TWO TO THREE MINUTES" AS YOU HAVE PREVIOUSLY ANSWERED WHEN ASKED BY I.E. ROSALES?

A.17.   N/R

QUESTIONS FOR RE D. PATZLOFF CONT.

Q.18. HOW WAS I SITTING WHEN YOU APPROACHED MY CELL (WHEN YOU TALKED TO ME ORIGINALLY ABOUT MY BMU STATUS ON THAT DAY) AFTER SPEAKING TO INMATES IN CELLS 250-248?

A.18. I not sure if he was standing or sitting but when I got to there he was standing at the door.

Q.19. WHAT ABOUT THE "CALLING YOU BACK" MADE YOU KNOW IT WAS ME WHO CALLED YOU?

A.19 I asked him.

Q.20 IN THE RVR YOU STATED YOU "BELIEF" WAS MY ACTIONS AND REASONS FOR CALLING YOU BACK TO MY CELL WAS TO EXPOSE MY "TESTICLES" TO YOU DELIBERATELY (BECAUSE YOU SEEN NOTHING ELSE "EXPOSED") CORRECT? (YES OR NO)

A.20    N/R

Q.21 WOULD YOU SAY THAT IT COULD HAVE BEEN VERY EASY FOR ME TO HAVE HAD MY "PENIS" EXPOSED WHEN YOU RETURNED TO THE CELL, ESPECIALLY SINCE YOUR CLAIMING MY ACTIONS AND REASONS WAS "DELIBERATE" CORRECT? (YES OR NO)

A.21.    N/R

Q.22. BUT MY "PENIS" WAS NOT VISABLE WHEN YOU CLAIM YOU SAW MY "DELIBERATELY" EXPOSED "TESTICLES" CORRECT? (YES OR NO)

A.22. N/R

Q.23. SINCE YOUR CLAIMING MY ACTIONS AND REASONS FOR EXPOSING MY "TESTICLES" WAS FOR MY OWN "SEXUAL GRATIFICATION", WOULD YOU STATE (FOR THE RECORD) THAT THERE WAS A LOT WORST THINGS I COULD HAVE BEEN "EXPOSING" AT THAT POINT? (YES OR NO)

A.23. N/R

(OVER)

⑩

Q.24. IN YOUR "BELIEF", HOW DOES EXPOSING MY "TESTICLES"
QUALIFY AS (FOR MY) "SEXUAL GRATIFICATION" (ESPECIALLY
SINCE YOUR CLAIMING THATS WHY I DID IT), WILL YOU
EXPLAIN THAT PLEASE?

A.24.    N/R

Q.25. IN LAYMAN TERMS, WHAT DO YOU MEAN WHEN YOU DESCRIBE
MY ACTIONS (AS NOTED IN THE RVR) AS BEING "LEWDLY AND
LASCIVIOUSLY" (BECAUSE THOSE ARE LEGAL TERMS), WOULD YOU
PLEASE EXPLAIN?

A.25. N/R

Q.26. COULD IT BE YOU'RE MISTAKEN REGARDING YOUR "BELIEF"
OF WHAT I WAS DOING; AND I SIMPLY WAS SITTING ON MY
BUNK (NOT EVEN CONCERNED WITH YOUR RETURN TO CELL 247)?
(YES OR NO)

A.26.    NO.

Q.27. WHERE WAS MY HANDS DURING THE TIME YOU SAW MY
EXPOSED "TESTICLES" AND WHAT WAS MY HANDS DOING?

~~A.27    he was wrestling something with a book~~

Q.28. YOU HAVE ALLEGED MY BOXER SHORTS WERE "PULLED OVER"
WHEN YOU LOOKED INTO THE CELL AND SAW MY "TESTICLES",
DID YOU ACTUALLY WITNESS THIS (SO CALLED) PULLING OVER
OF MY BOXER SHORTS? (OR IS THIS JUST YOUR IMAGINATION)?
(TWO QUESTIONS, REQUIRING TWO ANSWERS)

A.28.A.   NO.

A.28.B   N/R

I/M Copy

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART A - COVER SHEET**
CDCR 837-A (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| | | |
|---|---|---|
| Page 1 of 5 | INCIDENT LOG NUMBER<br>CAL-FB5-07-09-0273 | INCIDENT DATE<br>09/17/2007 | INCIDENT TIME<br>11:20 |

| INSTITUTION<br>CAL | FACILITY<br>FB5 - FACILITY B | FACILITY LEVEL<br>☐ I ☐ II ☐ RC<br>☐ III ☑ IV | INCIDENT SITE<br>HOUSING UNIT #5 | LOCATION<br>CELL 247L | PROGRAM<br>GP | AD/SEG<br>YARD<br>N/A | USE OF<br>FORCE:<br>No |

| SPECIFIC CRIME / INCIDENT<br>Sexual Misconduct - Indecent Exposure - Indecent Exposure with Priors | ☑ CCR ☐ PC ☐ N/A<br>3007 Sexual Behavior. | NUMBER / SUBSECTION |

| D.A. REFERRAL ELIGIBLE<br>☑ Yes ☐ No | CRISIS RESPONSE TEAM ACTIVATED<br>☐ Yes ☑ No | MUTUAL AID<br>☐ Yes ☑ No | PIO/AA NOTIFIED<br>☐ Yes ☑ No |

**RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)**

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☑ N/A<br>☐ INMATE<br>☐ STAFF<br>☐ VISITOR<br>☐ OTHER | ☑ N/A<br><br><br><br>Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☑ N/A<br>☐ INMATE<br>☐ STAFF<br>☐ VISITOR<br>☐ OTHER | ☑ N/A | ☑ N/A |

RECEIVED

SEP 2 6 2007

Associate Warden
Central Operations

9/24/07

**ESCAPES**
☑ N/A
☐ W / FORCE
☐ W/O FORCE
☐ ATTEMPTED

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☐ N/A<br>☑ MODIFIED PROGRM<br>☐ LOCKDOWN<br>☐ STATE OF<br>EMERGENCY<br>☐ OTHER<br><br>LIST AFFECTED<br>PROGRAMS<br>FACILITY B | ☑ N/A<br>☐ EMPLOYEE JOB ACTION<br>☐ ENVIRONMENTAL HAZARD<br>☐ EXPLOSION<br>☐ FIRE<br>☐ GANGS/DISRUPTIVE GROUP<br>☐ HOSTAGE<br>☐ INMATE STRIKE<br>☐ MAJOR DISTURBANCE<br>☐ MAJOR POWER OUTAGE<br>☐ NATURAL DISASTER<br>☐ PUBLIC DEMONSTRATION | ☐ SPECIAL INTEREST<br>I/M<br>☐ WEATHER<br>☐ SEARCH WARRANT<br>ARREST<br>☐ OTHER<br><br>**EXTRACTION**<br>☑ N/A<br>☐ CALCULATED<br>☐ EMERGENCY |

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)
On Monday, September 17, 2007, at approximately 1120 hours, an "Indecent Exposure with Priors" incident occurred on Facility B.

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE)<br>J. JIMENEZ JR. | TITLE<br>CORRECTIONAL LIEUTENANT | ID#<br>176144 | BADGE #<br>46045 |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE<br>6205 | DATE<br>9/17/07 |
| NAME OF WARDEN / AOD (PRINT/SIGN)<br>L. SCRIBNER    G.J. JANDA | | TITLE<br>WARDEN | DATE<br>9/18/07 |

CRIME / INCIDENT REPORT
PART A1 - SUPPLEMENT
CDCR 837-A1 (REV. 10/06).

Page 2 of 8

| | INCIDENT LOG NUMBER |
|---|---|
| | CAL-FB5-07-09-0273 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| CAL | FB5 - FACILITY B | 09/17/2007 | 11:20 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT    ☐ SUPPLEMENTAL INFORMATION    ☐ AMENDED INFORMATION    ☐ CLOSURE REPORT

PRECIPITATING EVENTS:

As BHU Facilitator D. Patzloff approached cell B5-247, she observed Inmate Cohea J-13647 (B5-247L) lying on his bed, wearing his boxer shorts. It should be noted that Inmate Cohea had just "called back" Ms. Patzloff to his assigned cell. Ms. Patzloff observed Inmate Cohea's legs wide open, with his right leg up. Inmate Cohea's shorts were pulled over in an way that it exposed his testicles. Ms. Patzloff immediately advised Inmate Cohea that he needed to be covered up. Ms. Patzloff advised the facility supervisors and Inmate Cohea was subsequently placed in Administrative Segregation pending ICC review.

This report is a compilation of the involved staffs written reports. For a more detailed and descriptive report refer to the appropriate CDC 837-C/C1.

USE OF FORCE: N/A

SUSPECTS: INMATE COHEA J-13647 (B5-247L)

VICTIMS: N/A

DECONTAMINATION: N/A

SEARHES AND ESCORTS:

C/O J. Torrent (B5 Floor #2) placed Inmate Cohea in handcuffs, completed a clothed body search for the presence of weapons and or contraband which proved negative, then escorted him to the Facility B Isometric Excerise Yard pending Ad-Seg placement. At the time of the incident, there were no holding cell available. Inmate Cohea was afforded restroom and water breaks per procedure.

Once secured, Inmate Cohea was given an unclothed body search which proved negative for weapons and/or contraband.

CRIME SCENE / EVIDENCE: No crime scene was established and no evidence was collected.

STAFF INJURIES / TREATMENT: No staff were injured during this incident.

INMATE INJURIES / TREATMENT:

A CDC 7219 Report of Injury or Unusual Occurrence form was completed on Inmate Cohea with no noted injuries.

ADDITIONAL INFORMATION:

Inmate Cohea will receive a CDC 115 RVR for a violation of CCR Title 15, Section 3007, charging him with the specific act of "Indecent Exposure with Priors".

Inmate Cohea medically cleared and rehoused in the Administrative Segregation Unit, pending adjudication of his CDC 115, and review by the Institutional Classification Committee for program and housing needs.

A CDCR 2152 "Employee Report of Inmate Sexual Misconduct form was completed.

A CDCR 128B chrono was completed and forwarded to Mental Health Services. Additionally, a message via

☑ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE: | ID# | BADGE # |
|---|---|---|---|
| J. JIMENEZ JR. | CORRECTIONAL LIEUTENANT | 176144 | 46045 |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. INCIDENT SITE | DATE |
|---|---|---|
| | 6205 | 9/17/07 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | TITLE | DATE |
|---|---|---|
| L. SCRIBNER   B. J. JANDA | WARDEN | 9/8/07 |

**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

| | Page 3 of 5 | INCIDENT LOG NUMBER |
|---|---|---|
| | | CAL-FB5-07-09-0273 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| CAL | FB5 - FACILITY B | 09/17/2007 | 11:20 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT    ☐ SUPPLEMENTAL INFORMATION    ☐ AMENDED INFORMATION    ☐ CLOSURE REPORT

voicemail was also completed at approximately 1530 hours.

Inmate Cohea is not a participant in the Mental Health Services Delivery System at any level of care.

Inmate Cohea's name does not appear on the Literacy Testing Report as having a T.A.B.E. score of 4.0 or below.

There was no allegations of excessive and or unneccessary force.

There was no damage to state or personal property as a result of this incident.

All appropriate Administrative staff have been contacted and advised of this incident.

You will be apprised of any further developments.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE: | ID# | BADGE # |
|---|---|---|---|
| J. JIMENEZ JR. | CORRECTIONAL LIEUTENANT | 176144 | 46045 |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE 9/17/07 |
| | | 6205 | |
| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE 9/18/07 |
| L. SCRIBNER | | WARDEN | |

CRIME / INCIDENT REPORT
PART B1 - INMATE
CDCR 837-B1 (REV. 10/06)

Page **4** Of **50**

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| CAL- | FB5 - Facility B | CAL-FB5-07-09-0273 |

## INMATE (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI #: | CII # |
|---|---|---|---|---|---|---|---|
| Cohea | Danny | | J-13647 | | | | |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | RELEASE Date Type | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| ☒ VICTIM | | ☒ YES | | | | | ☒ YES | | B5-247L |
| ☐ SUSPECT | | ☐ NO | | | | | ☒ NO | | |
| ☐ WITNESS | | | | | | | | | |

| INMATE LEVEL | ☒ N/A | ☒ CCCMS | ☒ EOP | ☒ DMH | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|---|---|---|---|
| | ☒ MHCB | ☒ DDP | ☒ DPP | | | |

| ☒ N/A   DESCRIPTION OF INJURIES | Injury Location - Cause - Force Used |
|---|---|

| ☒ N/A | ☒ TREATED AND RELEASED | ☒ HOSPITALIZED | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|---|
| ☒ DECEASED DATE | | ☒ REFUSED TREATMENT | ☒ N/A |

| Reason For Death | Is There Serious Injury | ☒ N/A  PRISON GANG / DISRUPTIVE GROUP: | VALIDATED / ASSOCIATED |
|---|---|---|---|
| | ☐ YES | | ☒ VALIDATED |
| | ☐ NO | | ☒ ASSOCIATED |

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI #: | CII # |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | LWOP | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| ☒ VICTIM | | ☐ YES | | | | | ☒ YES | | |
| ☐ SUSPECT | | ☐ NO | | | | | ☒ NO | | |
| ☐ WITNESS | | | | | | | | | |

| INMATE LEVEL | ☒ N/A | ☒ CCCMS | ☒ EOP | ☒ DMH | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|---|---|---|---|
| | ☒ MHCB | ☒ DDP | ☒ DPP | | | |

| ☒ N/A   DESCRIPTION OF INJURIES | Injury Location - Cause - Force Use |
|---|---|

| ☒ N/A | ☒ TREATED AND RELEASED | ☒ HOSPITALIZED | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|---|
| ☒ DECEASED DATE | | ☒ REFUSED TREATMENT | ☒ N/A |

| Reason For Death | Is There Serious Injury | ☒ N/A  PRISON GANG / DISRUPTIVE GROUP: | VALIDATED / ASSOCIATED |
|---|---|---|---|
| | ☒ YES | | ☒ VALIDATED |
| | ☒ NO | | ☒ ASSOCIATED |

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI #: | CII # |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | LWOP | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| ☒ VICTIM | | ☒ YES | | | | | ☒ YES | | |
| ☐ SUSPECT | | ☒ NO | | | | | ☒ NO | | |
| ☒ WITNESS | | | | | | | | | |

| INMATE LEVEL | ☒ N/A | ☒ CCCMS | ☒ EOP | ☒ DMH | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|---|---|---|---|
| | ☒ MHCB | ☒ DDP | ☒ DPP | | | |

| ☒ N/A   DESCRIPTION OF INJURIES | Injury Location - Cause - Force Use |
|---|---|

| ☒ N/A | ☒ TREATED AND RELEASED | ☒ HOSPITALIZED | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|---|
| ☒ DECEASED DATE | | ☒ REFUSED TREATMENT | ☒ N/A |

| Reason For Death | Is There Serious Injury | ☒ N/A  PRISON GANG / DISRUPTIVE GROUP: | VALIDATED / ASSOCIATED |
|---|---|---|---|
| | ☒ YES | | ☒ VALIDATED |
| | ☒ NO | | ☒ ASSOCIATED |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART B2 - STAFF
CDCR 837-B2 (REV. 10/06)

Page 5 of 5 ~~6~~

| INSTITUTION | FACILITY | | | | INCIDENT LOG NUMBER | |
|---|---|---|---|---|---|---|
| CAL | FB5 - FACILITY B | | | | CAL-FB5-07-09-0273 | |

### STAFF (ENTIRE SHEET)

| NAME: LAST | | FIRST | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| PATZLOFF | | D. | | VOCATIONAL INSTRUCTOR | | F | WHI | S/S |
| PARTICIPANT | BADGE # | | ID # | | POST ASSIGN # | POSITION | | |
| PRIMARY | | | 17604391 | | | BMU FACILITATOR | | |

☑ N/A    DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A    NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A | ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| | ☐ REFUSED TREATMENT | ☐ HOSPITALIZED | ☐ Yes  ☑ No | ☐ Yes  ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There Serious Injury | ⦿ No  ◯ Yes | | |

STATE OF CALFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT
PART C - STAFF REPORT

CDCR 837-C (REV. 10/06)

Page 6 of 6   INCIDENT LOG NUMBER   CAL-FB5-07-09-0773

| NAME: LAST Patzloff | FIRST Dina | MI M | INCIDENT DATE 9/17/07 | INCIDENT TIME 1120 |
|---|---|---|---|---|

| POST # | POSITION BMU Facilitator | YEARS OF SERVICE Ø YR. 3 MO. | DATE OF REPORT 9/17/07 | LOCATION OF INCIDENT BMU/B5 |
|---|---|---|---|---|

| RDO's S/S | DUTY HOURS 0730-1530 | DESCRIPTION OF CRIME / INCIDENT Indecent Exposure | CCR SECTION / RULE Title 15 Sec. 3007 |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☒ PRIMARY | | S- COHEA |
| ☐ RESPONDER | | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

**FORCE USED BY YOU**
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

**FORCE USED BY YOU - TYPE OF WEAPON / SHOTS FIRED / FORCE**
☒ N/A

WEAPON:
☐ MINI 14
☐ .38 CAL
☐ 9MM
☐ SHOTGUN

FORCE:
☐ EXPANDABLE BATON
☐ PHYSICAL FORCE
☐ X10

WARNING  EFFECT:

LAUNCHER:
☐ 37MM
☐ L8
☐ 40MM
☐ 40 MM MULTI
☐ HFWRS

EFFECT#:

CHEMICAL/ TYPE:
☒ N/A
☐ OC
☐ CN
☐ CS
☐ OTHER

**FORCE OBSERVED BY YOU**
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

| EVIDENCE DESCRIPTION ☒ N/A | EVIDENCE DESCRIPTION ☒ N/A | BIO HAZARD ☐ Yes ☒ No | PPE ☐ Yes ☒ No |
|---|---|---|---|

**EVIDENCE COLLECTED BY**
☐ Yes
☒ No

| DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL / CLINIC) ☒ N/A | FLUID EXPOSURE ☒ N/A ☐ BODILY ☐ UNKNOWN ☐ OTHER | SCIF 3301/3067 COMPLETED ☐ Yes ☒ No |
|---|---|---|---|

**REPORTING STAFF INJURED**
☐ Yes
☒ No

NARRATIVE:

On September 17, 2007 at approximately 1120 hours while performing my duties as BMU Facilitator/Teacher in housing B5, I was called back to the cell of Inmate Cohea, CDC# J13647, by Inmate Cohea housing B5-247L. When I arrived at his cell door, his light was on and he was lying on his bed. He was wearing only boxer shorts, his legs were wide open, his right leg was up, and his shorts were pulled over so his testicles were exposed and hanging down. He then jumped up and asked me some question for Counselor Rocha. I told him when I am here that he needs to cover himself up. It was obvious he was calling me over to expose himself to me.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF Dina Patzloff | TITLE BMU Facilitator | BADGE # | ID# 7604391 | DATE 9/17/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/ SIGNATURE) T. Cotle II | DATE RECEIVED 9/17/07 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☒ No | DATE 9/17/07 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

## MEDICAL REPORT OF INJURY
## OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| Cal Sp | B facility | USE OF FORCE  INJURY  UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 9/17/07 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST Cohea | FIRST Danny | CDC NUMBER 113647 | HOUSING LOC. B5-247 | NEW HOUSING LOC. AD SEG |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE B5 247 | DATE/TIME OF OCCURRENCE 9/17/07 | NAME OF WITNESS(ES) NA | |
|---|---|---|---|
| TIME NOTIFIED 1420 | TIME SEEN 1420 | ESCORTED BY Custody | MODE OF ARRIVAL *(circle)*  AMBULATORY  LITTER  WHEELCHAIR  ON SITE | AGE 49 | RACE Black | SEX M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"I have bleeding Hemmorrhoids/need to see specialist"

| INJURIES FOUND?    YES / NO | | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME NA | PHYSICIAN NOTIFIED/TIME NA |
|---|---|

| TIME/DISPOSITION 1220 / AD Seg placement | Clear for | REPORT COMPLETED BY/TITLE  (PRINT AND SIGN) V. Ramirez LVN / V. Ramirez LVN | BADGE # | RDOs F/S |
|---|---|---|---|---|

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDC 7219 (Rev. 11/02)    DISTRIBUTION:  ORIGINAL - UHR    CANARY - CUSTODY    PINK - HEALTH AND SAFETY/RTW COORDINATOR

EXHIBIT "D"

EXHIBIT "D"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS & REHABILITATION
CDCR-128G (Rev. 12/91)

**CDCR NO #:** J13647

**PS:** 72 **LEVEL:** IV

**WG/PG:** D1/D EFF. 09/17/2007

**NAME:** COHEA

**MEPD:** 08/06/2006

**NEXT ANNUAL:** 06/2008

**HOUSING:** A5/149L

**CUSTODY:** MAX

*Rec: 11/9/07*
*(PER INSTITUTIONAL MAIL)*

**INITIAL ASU REVIEW:** RETAIN ASU PENDING COMPLETION OF THE DISCIPLINARY PROCESS FOR RVR DATED 09/17/2007 (LOG# 09-07-B23) / ESTABLISH MAX CUSTODY & WG/PG D1/D EFFECTIVE 09/17/2007 / **REFER TO CSR RX 90 DAY ASU EXTENSION** / DOUBLE CELL APPROVED / ASSIGN YARD GROUP NO. 5, CONTROLLED COMPATIBLE (BLACKS, NORTHERN HISPANICS, OTHERS) / AFFIX IEX DESIGNATION / NO MHSDS, MDO, DDP, OR DPP ISSUES NOTED / RESCHEDULE ICC ON 12/20/2007.

Inmate Cohea was screened in person in ICC today for the purpose of an Initial ASU Review. Inmate was placed in Administrative Segregation Unit (ASU) on 09/17/2007 for the offense of Indecent Exposure, referenced in CDC 115 dated 09/17/2007 (Log# 09-07-B23). If found guilty, Inmate could be assessed a 6 month SHU term with a tentative MERD of 02/02/2008. Committee notes that pursuant to Memorandum dated 04/06/2007, the California Code of Regulations (CCR), Title 15, Section 3341.5(c)(9)(K), has been adapted to require assessment of a SHU term for the conduct for which inmate is charged. The 114D interview was conducted on 09/18/2007 by W. J. Price, FC. The 114D hearing was conducted on 09/27/2007 by ICC. Staff Assistant was not assigned. Investigative Employee was not assigned. The issues are not complex nor is the Inmate illiterate. His reading GPL is 7.7. Review of the 114D was within time limitations and no witnesses were requested. Committee finds that segregated housing is appropriate and elects to retain inmate in ASU pending completion of the disciplinary process for RVR dated 09/17/2007 (Log# 09-07-B23). Committee elects to affix IEX designation. **Committee refers this case to the CSR requesting a 90 day ASU extension.** Case factors remain the same as noted in Initial CDC 128G dated 03/02/2006. TB code 22 is noted in CDC 128C dated 03/13/2007. No enemies in Ad Seg are noted. Inmate is assigned to Yard Group No. 5, Controlled Compatible (Blacks, Northern Hispanics, Others). Inmate's case was reviewed for double cell housing and no pervasive pattern of in cell violence is noted. Inmate is assigned to double cell housing with no special restrictions. CDC 1882 is located in the central file. He was endorsed to CAL-IV 270 on 01/23/2006. Inmate's BPH Subsequent #1 is scheduled for 09/2010. Inmate does not meet MDO, DPP or DDP criteria. Inmate is not a participant in the MHSDS. CDC 128-C2 indicates NCF. Confidential information was not used. Inmate is assigned to Ad Seg earning status WG/PG D1/D effective 09/17/2007, custody is changed to MAX. Inmate was placed on non contact visiting status effective 09/17/2007. Inmate was advised he would be rescheduled for ICC on 12/20/2007. Inmate actively participated and stated he understood the actions of the Committee. Inmate was advised of his right to appeal and this Committee acts as his first level of appeal. His next Annual Review is 06/2008. Inmate stated that he disagrees with the description of the offense in the RVR dated 09/17/2007. Additionally, inmate stated that he requested witnesses on his 114D. He was informed by the Committee Chairperson that he request was denied. There are no other pertinent case factors noted. (acf)

_____    _____    _____
G.J. Janda, CDW (A)    Chairperson    J. Anaya, CCII    Recorder    W. J. Price, FC    Reviewed

**Committee Members:** J. Builteman, AW; J. Kellerman, Asst. C&PR; D. Middleton, Ph.D.

**cc:** Counselor, Inmate

**Date:** 09/27/2007

**CLASSIFICATION:** ICC AD/SEG

**INST:** CAL-IV

EXHIBIT "E"

EXHIBIT "E"

1

2

3

4

5

6

7

8                          United States District Court

9                         Eastern District of California

10

11

12   Danny James Cohea,

13            Plaintiff,              No. Civ. S 00-2799 FCD PAN P

14        vs.                        Findings and Recommendations

15   Cheryl K. Pliler, Warden,
     et al.,
16
              Defendants.
17

18 ──────────────────────────────────────=oOo=──────────────────────────

19        Plaintiff is a state prisoner without counsel litigating a

20   civil rights action.

21        Defendants moved June 25, 2004, to dismiss some claims and for

22   summary judgment on others.  See Fed. R. Civ. P. 56(c), 12(b)(6).

23        The court granted plaintiff two extensions of time to oppose

24   the motions; the second extension expired November 8, 2004.

25        November 22, 2004, plaintiff informed the court he still could

26   not oppose defendants' motion because prison officials had

1  transferred him to Corcoran State Prison October 27, 2004, and

2  failed to return his property (including copies of the pleading and

3  defendants' motion) over three weeks later. Plaintiff claims these

4  officials intentionally are obstructing his ability to oppose the

5  motion.

6      Plaintiff's November 22, 2004, paper was served on defendants

7  but they did not respond.

8      Accordingly, the court hereby recommends that defendants' June

9  25, 2004, motion to dismiss and for summary judgment be denied and

10  defendants be required to respond to plaintiff's accusation of

11  obstruction within 20 days of the district court's resolution of

12  the motion.

13      Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these

14  findings and recommendations are submitted to the United States

15  District Judge assigned to this case. Within 20 days after being

16  served with these findings and recommendations, defendants may file

17  written objections. The document should be captioned "Objections

18  to Magistrate Judge's Findings and Recommendations." The district

19  judge may accept, reject, or modify these findings and

20  recommendations in whole or in part.

21      Dated:  January 11, 2005.

22

23

24      _____

25      Peter A. Nowinski
        Magistrate Judge

26

EXHIBIT "F"

EXHIBIT "F"

1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANNY JAMES COHEA,

11                  Plaintiff,                    No. CIV S-00-2799 FCD PAN P

12          vs.

13   CHERYL K. PLILER, Warden,
     et al.,
14
                    Defendants.                   ORDER
15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  On March 10, 2005, plaintiff filed an ex parte request for a court order

18   requiring defendants to return his legal materials to him.[1]  Good cause appearing, IT IS HEREBY

19   ORDERED that:

20          1.  The Clerk of the Court is directed to serve a copy of plaintiff's March 10, 2006

21   motion on counsel for defendants; and

22   /////

23   /////

24   /////

25

26          [1]  Plaintiff did not serve his request on defendants and asserts that he was unable to do so
     because the address for service is contained in legal materials that are the subject of the request.

1          2.  Within ten days from the date of this order defendants shall file and serve a

2  response to plaintiff's March 10, 2006 request.

3  DATED:  March 24, 2006.

4

5                                        _____
                                              UNITED STATES MAGISTRATE JUDGE
6

7  12
   cohe2799.lmr
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MIME-Version:1.0 From:caed_cmecf_helpdesk@caed.uscourts.gov To:caed_cmecf_nef@caed.uscourts.gov
Message-Id: Subject:Activity in Case 2:00-cv-02799-FCD-PAN (JFM) (PC) Cohea v. Pliler, et al "Order"
Content-Type: text/html

***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

### U.S. District Court

### Eastern District of California – Live System

Notice of Electronic Filing

The following transaction was received from Warren, P entered on 3/27/2006 at 3:07 PM PST and filed on
3/27/2006 *Rec: 04/7/06*

Case Name:        (JFM) (PC) Cohea v. Pliler, et al
Case Number:      2:00-cv-2799
Filer:
Document Number: 76
Docket Text:
ORDER signed by Judge John F. Moulds on 03/24/06 ORDERING the Clerk to serve a copy of pltf's
03/10/06 motion on counsel for dfts; Within 10 days dfts to file and serve a response to pltf's 03/10/06
request. (Attachments: # (1) Pltf's 03/10/06 Ex Parte Request)(Warren, P)

The following document(s) are associated with this transaction:

**2:00-cv-2799 Electronically filed documents will be served electronically to:**

Sandra L Lusich   sandra.lusich@doj.ca.gov, DocketingSACCLS@doj.ca.gov,
ECFCoordinator@doj.ca.gov, Angie.Brodbeck@doj.ca.gov

**2:00-cv-2799 Electronically filed documents must be served conventionally by the filer to:**

Danny J. Cohea
J-13647
CSP-CAL
California State Prison – Calipatria
P.O. Box 5002
Calipatria, CA 92233-5002

EXHIBIT "#1"

EXHIBIT "#1"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**SHU TERM ASSESSMENT WORKSHEET**
CDC 629-A (Rev 3/96)

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| J-13647 | COHEA | CSP-CAL IV | B / ASU |

**1.    RULE VIOLATION RESULTING IN SHU TERM ASSESSMENT**
(If more than one SHU assessable offense and no SHU term has been established, use most serious as base term and less serious as aggravation.)

a.    Rule No. **3007**    Date Issued **09/17/07**    Title **Sexual Behavior**

b.    Specific Act **Indecent Exposure**
(Must be an offense on SHU Term Assessment Chart.)

c.    List range of months for the offense using
SHU Time Computation Table.................... **03** **06** **09**
   LOW  EXP.  HIGH

d.    Enter "expected" (mid-range) years, months, days of confinement.................... **06**
   YR  MO  DAYS

**2.    FACTORS IN MITIGATION AND AGGRAVATION**
(Enter "NONE" for item 2c or indicate amount of time.  Describe factors and document sources.  Use only factors listed in the DOM 62050 or concurrent offenses.)

a.    Mitigating Factors. Time subtracted for mitigations................ **.00**
   YR  MO  DAYS
   1) None
   2)
   3)

b.    Aggravating Factors. Time added for aggravations................ + **03**
   YR  MO  DAYS
   1) Indecent exposure dated 03/11/06, RVR Log # 03-A5-06-007
   2)
   3)

c.    Total time added or subtracted.................... = **03**
   YR  MO  DAYS

**3.    TOTAL SHU CONFINEMENT TIME ASSESSED....................**
(Subtract or add time for mitigation or aggravation to expected, item 1d plus or minus 2c)    **09**
   YR  MO  DAYS

**4.    DATE OF ADMINISTRATIVE SEGREGATION CONFINEMENT/VIOLATION.....**    **07** **09** **17**
   YR  MO  DAY

**5.    MAXIMUM DATE OF RELEASE FROM SHU....................**    **08** **06** **17**
(Add total time assessed to date of confinement, item 3 plus 4)    YR  MO  DAY

**6.    MINIMUM SHU CONFINEMENT TIME TO SERVE....................**    **06** **23**
(Enter 75% of the total SHU time (item 3) using the SHU Time Computation Table)    YR  MO  DAYS

a.    Date of confinement/violation (item 4)....................    **07** **09** **17**
   YR  MO  DAY

**7.    MINIMUM ELIGIBLE RELEASE DATE (MERD)....................**    **08** **04** **10**
(Add the minimum SHU time to the date of confinement, item 6 plus 6a)    YR  MO  DAY

**8.    FORFEITURE OF GOOD CONDUCT CREDITS FOR SUBSEQUENT MISCONDUCT**
(Enter "NONE" for item 8a or indicate the amount of time lost and describe and document the misconduct for which credit is being forfeited.  SHU inmates may forfeit up to 45 days of clean conduct credits for each disciplinary infraction that is not serious enough to warrant the assessment of a subsequent or concurrent SHU term.  Such forfeiture may be assessed against credits already earned and future credits.

a.    Time forfeited for CDC 115 - Dated:_____    ....................    YR  MO  DAYS
   1)
   2)

b.    **ADJUSTED MERD** Cannot Exceed MAXIMUM....................    YR  MO  DAY
(Add the amount of time forfeited to the prior MERD, item 7 plus 8a)

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE SIGNED | DATE ICC ESTABLISHED TERM |
|---|---|---|
| J. ANAYA,    CCII | | 11/21/07 |

DISTRIBUTION:  ORIGINAL - CENTRAL FILE;    YELLOW - INMATE;    PINK - AUDITOR

LOG # 09-07-B23

EXHIBIT "#2"

EXHIBIT "#2"

## NOTICE OF ADOPTION OF EMERGENCY REGULATIONS

### California Code of Regulations
### Title 15, Crime Prevention and Corrections
### Department of Corrections and Rehabilitation

**NOTICE IS HEREBY GIVEN** that the Secretary of the California Department of Corrections and Rehabilitation (CDCR), pursuant to the authority granted by Government Code Section 12838.5, Penal Code (PC) Section 5058, and the rulemaking authority granted by PC Section 5058.3, in order to implement, interpret and make specific PC Section 5054, proposes to adopt and amend Sections 3000, 3315, 3323, and 3341.5 of the California Code of Regulations (CCR), Title 15 concerning inmate indecent exposure.

### PUBLIC HEARING:

| | |
|---|---|
| Date and Time: | May 1, 2007 – 9:00 am to 10:00 am |
| Place: | Corrections Standards Authority |
| | Large Conference Room – West Entrance |
| | 660 Bercut Drive |
| | Sacramento, CA 95814 |
| Purpose: | To receive comments about this action. |

### PUBLIC COMMENT PERIOD:

The public comment period will close, <u>May 1, 2007 at 5:00 p.m.</u>  Any person may submit public comments in writing (by mail, by fax, or by e-mail) regarding the proposed changes.  To be considered by the Department, comments must be submitted to the CDCR, Regulation and Policy Management Branch, P.O. Box 942883, Sacramento, CA 94283-0001; by fax at (916) 341-7366; or by e-mail at *RPMB@cdcr.ca.gov* before the close of the comment period.

### CONTACT PERSON:

Please direct any inquiries regarding this action to:

**Timothy M. Lockwood, Chief**
**Regulation and Policy Management Branch**
**Department of Corrections and Rehabilitation**
**P.O. Box 942883, Sacramento, CA 94283-0001**
**Telephone (916) 341-7390**

In the event the contact person is unavailable, inquires should be directed to the following back-up person:

**Ann Cunningham**
**Regulation and Policy Management Branch**
**Telephone (916) 341-7390**

Questions regarding the substance of the proposed regulatory action should be directed to:

**Nancy L. Hardy, Associate Warden**
**High Security and Transitional Housing**
**Division of Adult Operations**
**Telephone: (916) 327-5034**

### LOCAL MANDATES:

This action imposes no mandates on local agencies or school districts, or a mandate which requires reimbursement pursuant to Government Code Section 17561.

## FISCAL IMPACT STATEMENT:

- Cost or savings to any state agency:                                     FY 06/07   $70,413

- Other nondiscretionary cost or savings imposed on
  local agencies:                                                                        *None*

- Cost or savings in federal funding to the state:                                        *None*

## EFFECT ON HOUSING COSTS:

The Department has made an initial determination that the proposed action will have no significant effect on housing costs.

## COST IMPACTS ON REPRESENTATIVE PRIVATE PERSONS OR BUSINESSES:

The Department is not aware of any cost impacts that a representative private person or business would necessarily incur in reasonable compliance with the proposed action.

## SIGNIFICANT STATEWIDE ADVERSE ECONOMIC IMPACT ON BUSINESS:

The Department has initially determined that the proposed regulations will not have a significant statewide adverse economic impact directly affecting businesses, including the ability of California businesses to compete with businesses in other states.

## EFFECT ON SMALL BUSINESSES:

The Department has determined that the proposed regulations may not affect small businesses. It is determined that this action has no significant adverse economic impact on small business because they are not affected by the internal management of state prisons.

## ASSESSMENTS OF EFFECTS ON JOB AND/OR BUSINESS CREATION, ELIMINATION OR EXPANSION:

The Department has determined that the proposed regulation will have no affect on the creation of new, or the elimination of existing jobs or businesses within California, or affect the expansion of businesses currently doing business in California.

## CONSIDERATION OF ALTERNATIVES:

The Department must determine that no reasonable alternative considered by the Department, or that has otherwise been identified and brought to the attention of the Department, would be more effective in carrying out the purpose for which the action is proposed, or would be as effective and less burdensome to affected private persons, than the proposed regulatory action. Interested persons are accordingly invited to present statements or arguments with respect to any alternatives to the changes proposed at the scheduled hearing or during the written comment period.

## AVAILABILITY OF PROPOSED TEXT AND INITIAL STATEMENT OF REASONS:

The Department has prepared, and will make available, the text and the Initial Statement of Reasons (ISOR) of the proposed regulations. The rulemaking file for this regulatory action, which contains those items and all information on which the proposal is based (i.e., rulemaking file) is available to the public upon request directed to the Department's contact person. The proposed text, ISOR, and Notice of Proposed Action will also be made available on the Department's website http://www.cdcr.ca.gov.

## AVAILABILITY OF THE FINAL STATEMENT OF REASONS:

Following its preparation, a copy of the Final Statement of Reasons may be obtained from the Department's contact person.

## AVAILABILITY OF CHANGES TO PROPOSED TEXT:

After considering all timely and relevant comments received, the Department may adopt the proposed regulations substantially as described in this Notice. If the Department makes modifications which are sufficiently related to the originally proposed text, it will make the modified text (with the changes clearly indicated) available to the public for at least 15 days before the Department adopts the regulations as revised. Requests for copies of any

modified regulation text should be directed to the contact person indicated in this Notice. The Department will accept written comments on the modified regulations for 15 days after the date on which they are made available.

## INFORMATIVE DIGEST/POLICY STATEMENT OVERVIEW:

Penal Code (PC) Section 5000 provides that commencing July 1, 2005, any reference to the Department of Corrections in this or any code, refers to the CDCR, Division of Adult Operations.

PC Section 5054 provides that the supervision, management, and control of the State prisons, and the responsibility for the care, custody, treatment, training, discipline, and employment of persons confined therein are vested in the director. Commencing July 1, 2005, the supervision, management, and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline, and employment of persons confined therein are vested in the Secretary of the CDCR.

PC Section 5058 authorizes the Director to prescribe and amend regulations for the administration of prisons.

PC Section 5058.3 authorizes the Director to adopt, amend, or repeal emergency regulations conducted pursuant to Government Code Section 11340.

- This action amends and adopts provisions governing the inmate indecent exposure within the California Department of Corrections and Rehabilitation (CDCR). This language is being amended as a result of a Court decision in the case of *Freitag vs. California Department of Corrections and Rehabilitation*, Case No. CV-00-02278-TEH, U.S. Court of Appeals for the Ninth Circuit. The original Indecent Exposure Program was implemented through a 24-month Pilot Program at Pelican Bay State Prison by Order Granting Injunctive Relief, U. S. Northern District Court Citation No. C00-2278-TEH (EDL).Judge Henderson, has stressed that a statewide rollout of the Program must be implemented immediately in order to reduce inmate sexual misconduct incidents at all institutions in the State.

- The purpose of the program is to encourage acceptable behavior among inmates and to provide a work environment in which staff is not subject to a sexually hostile work environment because of inmate sexual misconduct. This pilot program is designed to discourage inmates from engaging in Indecent Exposure and Sexual Disorderly Conduct.

- The CDCR has identified a need to promote compliance with regulations and policies among inmates that commit Indecent Exposure and Sexual Disorderly Conduct violations. When an inmate deliberately exposes their person, or the private parts thereof, including genitals, buttocks, or breasts to a staff member or inappropriately touches themself under circumstances likely to cause affront, there is a legal mandate requiring a prompt and effective remedial action be taken on the part of CDCR.

- This Plan for the Management of Indecent Exposure and Sexual Disorderly Conduct Incidents will require that inmates found guilty of committing an Indecent Exposure or Sexual Disorderly Conduct offense would be subject to credit and privilege losses including canteen, appliances, and annual and/or quarterly package restrictions in excess of those currently provided for in the CCR, Title 15, Crime Prevention and Corrections. Additionally, inmates found guilty of committing Indecent Exposure or Sexual Disorderly Conduct offenses may also be subject to the assessment of an "R" suffix at the discretion of the classification committee and retention in the Security Housing Unit (SHU).

- Inmates who engage in acts of Indecent Exposure or Sexual Disorderly Conduct will be subjected to Security Measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff. Security Measures are tools used by staff for a determinate period to identify, prevent, and curtail the threatening behavior. There are two kinds of Security Measures, Precautions and Restrictions. Security Precautions are not used as a punishment and should not be confused with disciplinary restrictions. Security Restrictions are applied as a result of a disciplinary action where inmates are afforded due process.

**Text of Proposed Regulations**

**In the following text, underlining indicates adopted or amended text; and strikethrough indicates deleted text.**

**3000. Definitions.**

**Section 3000 is amended to read:**

The definition below is alphabetically merged in the regulations and is adopted to read:

\*
\*
\*

Indecent Exposure means every person who willfully and lewdly, either: exposes his or her person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or, procures, counsels, or assists any person so to expose him or her self or take part in any model artist exhibition, or to make any other exhibition of him or her self to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts.

\*
\*
\*

Sexual Disorderly Conduct means every person who touches, without exposing, his or her genitals, buttocks or breasts in a manner that demonstrates it is for the purpose of sexual arousal, gratification, annoyance, or offense, and that any reasonable person would consider this conduct offensive.

NOTE: Authority cited: Sections 2717.3, 5058, and 5058.3, Penal Code; Section 10115.3(b), Public Contract Code; and Section 4525(a), 4526 and 14837, Government Code. Reference: Sections 186.22, 243, 314, 530, 532, 646.9, 653m, 832.5, 1389, 2080, 2081.5, 2600, 2601, 2700, 2717.1, 2717.6, 2932.5, 4570, 5009, 5054, 5068, and 7000 et seq., Penal Code; Sections 1132.4 and 1132.8, Labor Code; Sections 10106, 10108, 10108.5, 10115, 10115.1, 10115.2,10115.3, and 10127, Public Contract Code; and Section 999, Military and Veterans Code; Section 391, Code of Civil Procedure; *In re*

*4*

*Bittaker,* 55 Ca.App. 4th 1004, 64 Cal.Rptr. 2d 679; and Section 11007, Health and Safety Code.

**3315. Serious Rule Violations.**

**Subsections 3315(a) through (e) are unchanged.**

(f) Disposition. Upon completion of the fact-finding portion of the disciplinary hearing, the inmate may be found:

**Subsection 3315(f)(1) through (f)(5)(K) is unchanged.**

(5) The disposition may or when mandated shall include assessment of one or more of the following:

**New subsection 3315(f)(5)(L), (L) 1 and (L)2 is adopted to read:**

(L)   Violation of Indecent Exposure or Sexual Disorderly Conduct of sections 3007, 3323(d)(7), 3323(f)(5), and 3323(g)(8) shall result in:

1.  First offense violation shall result in loss of any or all of the following for up to 90 days: canteen, appliances, vendor packages, telephone privileges, and personal property.

2.  Second offense and subsequent offense violation(s) shall result in loss of any or all of the following for up to 180 days: canteen, appliances, vendor packages, telephone privileges, and personal property.

**Subsection 3315(g) is unchanged.**

**The Note Section is amended to read:**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 295–300.3, 314, 530, 532, 646.9, 647, 653m, 2931, 2932, 2933, 4573.6, 5054, 5068 and 12020, Penal Code.

**3323. Disciplinary Credit Forfeiture Schedule.**

**Subsections 3323(a) through 3323(d)(6) are unchanged.**

**New subsection 3323(d)(7) is adopted to read:**

(7) Indecent Exposure with prior court conviction under PC 314 or PC 288.

**Existing subsection 3323(d)(7) through 3323(d)(8) are renumbered to 3323(d)(8) through 3323(d)(9) respectively, and is unchanged.**

(78) Any felony not involving violence or the use of a weapon not listed in this schedule.

(89) Conspiracy to commit any Division "B" offense.

**Subsections 3323(e) through 3323(f)(4) are unchanged.**

**Subsection 3323(f)(5) is amended to read:**

(5) Indecent Exposure without a prior court conviction under PC 314 or PC 288.

**Subsections 3323(f)(6) through 3323(g)(7) are unchanged.**

**New subsection 3323(g)(8) is adopted to read:**

(8) Sexual Disorderly Conduct.

**Existing subsection 3323(g)(8) through 3323(g)(9) is renumbered to 3323(g)(9) through 3323(g)(10) respectively, and is unchanged.**

(89) Commission of any misdemeanor offense not listed in this schedule and not specified as administrative in section 3314.

(910) Conspiracy to commit any Division "E" offense.

**Subsections 3323(h) through 3323(k) are unchanged.**

**The Note Section is amended to read:**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 148, 243, 295–300.3, 314, 647, 2932, 2933, 4573.6, 4600, 5054 and 12020, Penal Code.

**3341.5. Segregated Program Housing Units.**

**Subsections 3341.5 (a) through (c)(9)(J) are unchanged.**

(9) SHU Term Assessment Chart (fixing of determinate confinement to SHU).

| | TYPICAL TERM (Mos) | | |
|---|---|---|---|
| OFFENSE | Low | Expected | High |
| (A) Homicide: | | | |
| 1. Murder, attempted murder, solicitation of murder, or voluntary manslaughter of a non-inmate. | (36 | 48 | 60) |
| 2. Murder, attempted murder, solicitation of murder, or voluntary manslaughter of an inmate. | (15 | 26 | 36) |
| (B) Violence Against Persons: | | | |
| 1. Assault on a non-inmate with a weapon or physical force capable of causing mortal or serious injury. | (09 | 28 | 48) |
| 2. Assault on an inmate with a weapon or physical force capable of causing mortal or serious injury. | (06 | 15 | 24) |
| 3. Assault on a non-inmate with physical force insufficient to cause serious injury. | (06 | 12 | 18) |
| 4. Assault on an inmate with physical force insufficient to cause serious injury. | (02 | 03 | 06) |
| 5. Throwing a caustic substance on a non-inmate. | (02 | 03 | 04) |
| (C) Threat to Kill or Assault Persons: | | | |
| 1. Use of non-inmate as hostage. | (18 | 27 | 36) |
| 2. Threat to a non-inmate. | (02 | 05 | 09) |
| 3. Threat to an inmate. | (02 | 03 | 04) |
| (D) Possession of a Weapon: | | | |
| 1. Possession of a firearm or explosive device. | (18 | 27 | 36) |
| 2. Possession of a weapon, other than a firearm or explosive device which has been manufactured or modified so as to have the obvious intent or capability of inflicting traumatic injury, and which is under the immediate or identifiable control of the inmate. | (06 | 10 | 15) |
| (E) Trafficking in Drugs: Distributing controlled substances in an institution or camp or causing controlled substances to be brought into an institution or camp for the purpose of distribution. | (06 | 09 | 12) |
| (F) Escape With Force or Attempted Escape with Force. | (09 | 16 | 24) |
| (G) Disturbance, Riot, or Strike: | | | |
| 1. Leading a disturbance, riot, or strike. | (06 | 12 | 18) |
| 2. Active participation in, or attempting to cause conditions likely to threaten institution security. | (02 | 04 | 06) |
| (H) Harassment of another person, group, or entity either directly or indirectly through the use of the mail or other means. | (06 | 12 | 18) |
| (I) Arson, Theft, Destruction of Property: Theft or | | | |

|  |  |  |  |
|---|---|---|---|
| destruction of State property where the loss or potential loss exceeds $10,000 or threatens the safety of others. | (02 | 08 | 12) |
| (J) Extortion and Bribery:  extortion or bribery of a non-inmate. | (02 | 06 | 09) |

**New subsection 3341.5(c)(9)(K) is adopted to read:**

| (K) Sexual Misconduct | | | |
|---|---|---|---|
| 1. Indecent Exposure | (3 | 06 | 09) |
| 2. Sexual Disorderly Conduct (two or more offenses within a twelve month period) | (3 | 06 | 09) |

**Existing subsection 3341.5(c)(9)(K) through 3341.5(c)(9)(L) is renumbered to 3341.5(c)(9)(L) through 3341.5(c)(9)(M) respectively and is unchanged.**

(L~K~) Except as otherwise specified in this section, proven attempts to commit any of the above listed offenses shall receive one-half (1/2) of the term specified for that offense.

(M~L~) Any inmate who conspires to commit any of the offenses above shall receive the term specified for that offense.

**Subsection 3341.5(c)(10) through 3341.5(c)(10)(B) is unchanged.**

**The Note Section is amended to read:**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 314, 5054 and 5068, Penal Code; *Sandin* v. *Connor* (1995) 515 U.S. 472; *Madrid* v. *Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint* v. *McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint* v. *Yockey* (9th Cir. 1984) 722 F.2d 1490; and *Castillo* v. *Alameida, et al.,* (N.D. Cal., No. C94-2847).

8

**INITIAL STATEMENT OF REASONS:**

This action amends and adopts provisions governing the inmate indecent exposure within the California Department of Corrections and Rehabilitation (CDCR). California Code of Regulations (CCR), Sections 3000, 3315, 3323, and 3341.5 are being amended as a result of a Court decision in the case of *Freitag vs. California Department of Corrections and Rehabilitation*, Case No. CV-00-02278-TEH, U.S. Court of Appeals for the Ninth Circuit. The original Indecent Exposure Program was implementation through a 24-month Pilot Program at Pelican Bay State Prison by Order Granting Injunctive Relief, U. S. Northern District Court Citation No. C00-2278-TEH (EDL). Judge Henderson, has stressed that a statewide rollout of the Program must be implemented immediately in order to reduce inmate sexual misconduct incidents at all institutions in the State.

The purpose of the program is to encourage acceptable behavior among inmates and to provide a work environment in which staff is not subject to a sexually hostile work environment because of inmate sexual misconduct. This pilot program is designed to discourage inmates from engaging in Indecent Exposure and Sexual Disorderly.

The CDCR has identified a need to promote compliance with regulations and policies among inmates that commit Indecent Exposure and Sexual Disorderly Conduct violations. When an inmate deliberately exposes his or her person, or the private parts thereof, including genitals, buttocks, or breasts to a staff member or inappropriately touches his or her self under circumstances likely to cause affront, there is a legal mandate requiring a prompt and effective remedial action be taken on the part of CDCR. This Plan for the Management of Indecent Exposure and Sexual Disorderly Conduct Incidents will require that inmates found guilty of committing an Indecent Exposure or Sexual Disorderly Conduct offense would be subject to credit and privilege losses including canteen, appliances, and annual and/or quarterly package restrictions in excess of those currently provided for in the CCR, Title 15, Crime Prevention and Corrections. Additionally, inmates found guilty of committing Indecent Exposure or Sexual Disorderly Conduct offenses may also be subject to the assessment of an "R" suffix at the discretion of the classification committee and retention in the Security Housing Unit (SHU).

Inmates who engage in acts of Indecent Exposure or Sexual Disorderly Conduct will be subjected to Security Measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff. Security Measures are tools used by staff for a determinate period to identify, prevent, and curtail the threatening behavior.

There are two kinds of Security Measures, Precautions and Restrictions. Security Precautions are not used as a punishment and should not be confused with disciplinary restrictions. Security Restrictions are applied as a result of a disciplinary action where inmates are afforded due process.

The Department has determined that no reasonable alternatives to the regulations have been identified or brought to the attention of the Department that would lessen any adverse impact on small business.

The Department has made an initial determination that the action will not have a significant adverse economic impact on business. Additionally, there has been no testimony or other evidence provided that would alter the Department's initial determination.

The Department has determined that this action imposes no mandates on local agencies or school districts, or a mandate, which requires reimbursement pursuant to Part 7 (Section 17561) of Division 4.

The Department must determine that no alternative considered would be more effective in carrying out the purpose of this action or would be as effective, and less burdensome to affected private persons than the action proposed.

**Section 3000 is amended** to incorporate the word definition for Indecent Exposure and Sexually Disorderly Conduct. PC Section 314 is the basis for the Indecent Exposure definition. It is necessary for this language to be placed in the CCR for clarity and ease of understanding for correctional staff for expedited reference and an explanation specific to inmate behavior regarding indecent exposure. The definition for Sexually Disorderly Conduct was extracted from various sections within the PC and within the *Freitag* Stipulated Agreement ordered by Federal Judge Henderson. These definitions are necessary to endure that the behavior regarding indecent exposure and sexually disorderly conduct are clear as not to be confused with other behavior issues. The Note Section of the CCR has been amended to include PC 314 and 647(a) regarding the definition of Indecent Exposure and Sexually Disorderly Conduct.

**Subsection 3315(a) through (f)(5)(K) are unchanged.**

**Subsection 3315(f)(5)(L), (L)1 and (L)2 is adopted** to include indecent exposure or sexually disorderly conduct to the list of misconduct that shall be reportable as a serious rule violation. The specific acts of indecent exposure or sexual disorderly conduct are in violation of section 3007, Sexual Behavior rule violation. Sections 3323(d)(7), (f)(5) and (g)(8) are used to provide staff the parameters of disposition that can be assessed for that offense as a result of a finding of guilt. This section describes the specific loss of privileges for first, second and subsequent offense violation that include the loss of any or all of the following: loss of canteen, loss of appliances, annual and/or vendor packages, telephone privileges and loss of personal property. The first, second and subsequent offense violation(s) shall result in the same privilege loss as above for 90 days and up to 180 days, respectively. This loss of privilege is necessary to provide incentive for proper inmate behavior.

**Subsection 3315(g) is unchanged.**

**The Note Section is amended** to add Penal Code Sections 314 and 647(a) as references regarding Indecent Exposure and Sexually Disorderly Conduct.

**Subsections 3323(a) through 3323(d)(6) are unchanged.**

**New subsection 3323(d)(7) is adopted** to include Indecent Exposure with a prior court conviction under PC 314 or PC 288 is to be classified as a Division "B" offense. Including this offense, as defined in Section 3000, in this subsection will aid staff in correctly classifying Indecent Exposure with a prior court conviction as a Division "B" offense. Inmates who engage in acts of Indecent Exposure will be subjected to security measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff.

**Existing subsection 3323(d)(7) through 3323(d)(8) is renumbered to 3323(d)(8) through 3323(d)(9) respectively, and is unchanged.**

**Subsections 3323(e) through 3323(f)(4) is unchanged.**

*10*

**Subsection 3323(f)(5) is amended** to specify that Indecent Exposure without a prior court conviction under PC 314 or PC 288 is included as a Division "D" offense. Including this offense, as defined in Section 3000, in this subsection will aid staff in correctly classifying Indecent Exposure without a prior court conviction as a Division "D" offense. Inmates who engage in acts of Indecent Exposure will be subjected to security measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff.

**Subsections 3323(f)(6) through 3323(g)(7) are unchanged.**

**New Subsection 3323(g)(8) is adopted** to specify that sexual disorderly conduct, as defined in Section 3000, is included as a Division "E" offense. Including this offense in this subsection will aid staff in correctly classifying sexual disorderly conduct as a Division "E" offense. Inmates who engage in acts of Sexual Disorderly Conduct will be subjected to security measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff.

**Existing subsection 3323(g)(8) through 3323(g)(9) is renumbered to 3323(g)(9) through 3323(g)(10) respectively, and is unchanged.**

**Subsections 3323(h) through 3323(k) are unchanged.**

**The Note Section is amended to** add Penal Code Section 314 as a reference regarding Indecent Exposure and Sexually Disorderly Conduct.

**Subsections 3341.5(a) through 3341.5(c)(9)(J) are unchanged.**

**New subsection 3341.5(c)(9)(K) is adopted** to include the category of Sexual Misconduct, in the Segregated Housing Unit (SHU) Term Assessment Chart. Sexual Misconduct includes Indecent Exposure and Sexual Disorderly Conduct (with two or more offenses within a twelve month period). The typical SHU term will be fixed as follows: Low – 3 months, Expected – 6 months and High – 9 months terms. The SHU term shall be set at the expected range unless a classification committee finds factors exist which warrant the imposition of a lesser or greater period of confinement.

**Existing subsection 3341.5(c)(9)(K) through 3341.5(c)(9)(L) is renumbered to 3341.5(c)(9)(L) through 3341.5(c)(9)(M) respectively, and is unchanged.**

**Subsection 3341.5(c)(10) through 3341.5(c)(10)(B) is unchanged.**

**The Note Section is amended to** add Penal Code Section 314 as a reference regarding Indecent Exposure and Sexually Disorderly Conduct.